## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------   x
In re:                                          :   Chapter 11
                                                :
SUNTECH AMERICA, INC., et al.,                  :   Case No. 15-_____ (____)
                                                :
            Debtors.¹                           :   Joint Administration Requested
                                                :
------------------------------------------------   x
```

### MOTION OF DEBTORS FOR AN ORDER
### (I) AUTHORIZING CONTINUED USE OF EXISTING
### CASH MANAGEMENT SYSTEM AND (II) GRANTING CERTAIN RELATED RELIEF

Suntech America, Inc. ("**Suntech America**") and Suntech Arizona, Inc. ("**Suntech Arizona**"), the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby move (the "**Motion**") for entry of an order, under Sections 105, 345, and 363 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management system, including maintenance of the Debtors' existing bank accounts, checks and business forms; (ii) granting the Debtors a waiver of certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "**United States Trustee**") to the extent that such requirements are inconsistent with (a) the Debtors' existing practices under the cash management system or (b) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Debtors' Chapter 11 cases; and (iii) granting the Debtors additional time to comply

---

¹ The Debtors in these Chapter 11 Cases, along with the last four digits of the Debtors' federal tax identification numbers, are Suntech America, Inc. (9235) and Suntech Arizona, Inc. (0353). The above-captioned Debtors' mailing address is 501 Second Street, Suite 575, San Francisco, California 94107.

with Section 345 of the Bankruptcy Code. In support of the Motion, the Debtors rely upon the *Declaration of Robert Moon in Support of Chapter 11 Petitions and First Day Motions*, filed with the Court concurrently herewith and fully incorporated herein (the "**First Day Declaration**"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are Sections 105(a), 345, and 363 of the Bankruptcy Code, Bankruptcy Rule 6003 and Local Rule 2015-2.

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

## RELIEF REQUESTED

4.      By this Motion, the Debtors seek entry of an order, pursuant to Sections 105(a), 345, and 363 of the Bankruptcy Code, authorizing, but not directing, the Debtors to continue to

maintain and use their existing cash management system, including maintenance of the Debtors' existing bank accounts, checks and business forms; (b) granting the Debtors a waiver of certain bank account and related requirements of the United States Trustee to the extent that such requirements are inconsistent with (i) the Debtors' existing practices under the cash management system or (ii) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases; and (c) granting an extension of sixty (60) days for the Debtors to comply with the requirements of Section 345 of the Bankruptcy Code. The Debtors also request that the Court (a) authorize and direct all banks with which the Debtors maintain accounts to continue to maintain, service, and administer such accounts; (b) waive any applicable requirement to establish separate accounts for cash collateral and/or tax payments; and (c) authorize third-party payroll and benefits administrators and providers to prepare and issue checks on behalf of the Debtors.

## BASIS FOR RELIEF

### A.       The Debtors' Cash Management System and Bank Accounts

5.       In the ordinary course of their businesses, the Debtors maintain a cash management system (the "**Cash Management System**"). The Cash Management System allows the Debtors to efficiently identify the Debtors' cash requirements and efficiently monitor and control all of the Debtors' cash receipts and disbursements.

6.       As of the Petition Date, the Debtors maintain five bank accounts (collectively, the "**Bank Accounts**") at Bank of America, N.A., Bank of China and BridgeBank (each a "**Bank**",

and collectively, the "**Banks**").  A schedule of the Bank Accounts is attached as **Exhibit B** to this Motion.[2]

7.     The Cash Management System is primarily organized in a way that facilitates the Debtors ability to identify and fund their ongoing capital needs.  A summary of the Cash Management System is attached hereto as **Exhibit A**.

8.     **Debtors' Bank Accounts:**  The Debtors' Bank Accounts, are described below:

(a)     Debtor Suntech America maintains one general operating account at Bank of America, N.A. (Account No. XXXXX8137) (the "**Suntech America Cash Account**");

(b)     Debtor Suntech America maintains a restricted certificated deposit account at BridgeBank (Account No. XXXXX7482) (the "**Suntech America Restricted Account**");

(c)     Debtor Suntech America maintains an account at the Bank of China (Account No. XXXXX0495) (the "**Suntech Bank of China Account**");

(d)     Debtor Suntech Arizona maintains one general operating account at Bank of America, N.A. (Account No. XXXXX9815) (the "**Suntech Arizona Cash Account**"); and

(e)     Debtor Suntech Arizona maintains a general account at Bank of America, N.A. (Account No. XXXXX9831) (the "**Adequate Assurance Deposit Account**").

9.     Suntech America currently is in the process of liquidating its remaining solar panel inventory, the proceeds of which are paid into the Suntech America Cash Account, as more fully described in **Exhibit A**.  Certain of the Debtors' liabilities, including obligations under a commercial lease for a manufacturing facility in Goodyear, Arizona (the "**Goodyear Facility**"), are in the name of Suntech Arizona.  Accordingly, on a routine and as-needed basis, Suntech

---

[2]     The Debtors believe, and have undertaken reasonable efforts to ensure, that **Exhibit B** lists all of the Bank Accounts.  In the event that the Debtors inadvertently omitted any Bank Account from **Exhibit B**, the Debtors request that the relief sought by this Motion be deemed to apply to any such inadvertently omitted Bank Account.

America transfers funds necessary to service Suntech Arizona's liabilities, including amounts owed in connection with the Goodyear Facility, into the Suntech Arizona Cash Account.

10.     Additionally, as noted above, Suntech America maintains the Suntech America Restricted Account. The Suntech America Restricted Account was created in connection with a letter of credit (the "**Letter of Credit**")[3] that Suntech America applied for in connection with the sale of certain solar panel modules. When sold, the solar panel modules came with certain warranties issued by an unaffiliated third party. To backstop such warranties, the solar panel module purchaser requested, and Suntech America provided, the Letter of Credit issued by BridgeBank (the "**LOC Issuer**"). However, the LOC Issuer conditioned issuing the Letter of Credit on Suntech America's providing security to secure the LOC Issuer's right to seek reimbursement from Suntech America in the event that the Letter of Credit is drawn. Accordingly, the Suntech America Restricted Account acts as cash-security of the LOC Issuer for the outstanding Letter of Credit. The Debtors will not use such cash in these Chapter 11 cases and will continue to keep such cash segregated unless and until such time as the Court enters an order authorizing use of the same.

11.     Finally, Suntech Arizona opened the Adequate Assurance Deposit Account which it intends to use to hold the account adequate assurance deposits in connection with the *Motion of Debtors for an Order (I) Prohibiting Utility Companies from Altering or Discontinuing Service on Account of Prepetition Invoices, (II) Approving Deposit as Adequate Assurance of Payment*

---

[3]     In the ordinary course of its business, Suntech America also applied for and received certain additional letters of credit for the benefit of certain customers in order to backstop such customers' warranty claims, if any. In connection with certain of such letters of credit, Debtor Suntech America opened the Suntech America Bank of China Account. By this Motion, the Debtors request that they be permitted to continue to utilize the Suntech America Bank of China Account in the ordinary course in addition to the other Bank Accounts.

*and (III) Establishing Procedures for Resolving Requests by Utility Companies for Additional Assurance of Payment*, filed contemporaneously herewith.

**B.      The Debtors Should be Authorized to Continue to Use Their Existing Cash Management System and Bank Accounts.**

12.      The Debtors believe that the Cash Management System is an ordinary course, customary and essential business practice, and is similar to cash management systems employed by other businesses of a similar size and complexity.  The Cash Management System allows the Debtors to efficiently identify the Debtors' cash requirements and efficiently monitor and control all of the Debtors' cash receipts and disbursements.

13.      The continued use of the Cash Management System during the pendency of the Chapter 11 Cases is essential to the Debtors' business operations and their goal of maximizing value for the benefit of all parties in interest.  Requiring the Debtors to adopt new cash management systems at this early and critical stage would be expensive, impose needless administrative burdens and cause undue disruption.  Any such disruption would adversely affect the Debtors' ability to maximize estate value for the benefit of creditors and other parties in interest.  Moreover, such a disruption would be wholly unnecessary insofar as the Cash Management System provides a valuable and efficient means for the Debtors to address their cash management requirements.  Maintaining the existing Cash Management System without disruption is essential to the Debtors' ongoing operations and their orderly wind-down and liquidation, and also is in the best interests of the Debtors, their estates and all interested parties. Accordingly, the Debtors request that they be allowed to maintain and continue to use the Cash Management System and the Bank Accounts.

14.      As part of the relief requested herein, and to ensure that their transition into Chapter 11 is as smooth as possible, the Debtors seek an order authorizing the Debtors to

(a) maintain and continue to use the Bank Accounts, including but not limited to those accounts that are listed on **Exhibit B** hereto, in the same manner and with the same account numbers, styles and document forms as are currently employed, (b) deposit funds in the Bank Accounts by all usual means, (c) pay ordinary course bank fees in connection with the Bank Accounts including prepetition fees, (d) perform their obligations under the documents and agreements governing the Bank Accounts, and (e) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession.

15.    If the relief requested herein is granted, the Debtors will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by the Debtors prior to the Petition Date, other than those authorized by this Court.    To prevent the possible inadvertent payment of prepetition claims against the Debtors, except those otherwise authorized by the Court, the Debtors will work closely with the Banks to ensure appropriate procedures are in place to prevent checks issued prepetition from being honored absent this Court's approval. However, the Debtors request that if a Bank implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) as a result of a good faith error made despite implementation of reasonable item handling procedures, the Banks will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item being honored post-petition.    The Debtors believe that such flexibility accorded the Banks is necessary to induce the Banks to continue providing cash management services to the Debtors.

16.     In addition, and in the interest of maintaining the continued and efficient operation of the Cash Management System during the pendency of these Chapter 11 Cases and subject to the terms of any financing order in these cases, the Debtors request that the Banks be authorized and directed to continue to administer, service and maintain the Bank Accounts as such accounts were administered, serviced and maintained prepetition, without interruption and in the ordinary course (including making deductions for bank fees).

17.     The Debtors further request that they be authorized to implement such reasonable changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional Bank Accounts following the Petition Date (the "**New Accounts**"), wherever the Debtors deem that such accounts are needed or appropriate, and whether or not the banks in which the accounts are opened are designated depositories in the District of Delaware.  Notwithstanding the foregoing, any New Account that the Debtors open will be (a) at the Banks or with a bank that is organized under the laws of the United States of America or any state therein and insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (b) designated a "Debtor in Possession" account by the relevant bank.  The Debtors request that the relief sought by this Motion extend to any New Accounts and that any order approving this Motion provide that the New Accounts are deemed to be Bank Accounts and are similarly subject to the rights, obligations and relief granted in the order.  The Debtors will provide the United States Trustee and any statutory committee appointed in these cases with written notice of any New Accounts that are opened.  In furtherance of the foregoing, the Debtors also request that the relevant banks be authorized to honor the Debtors' requests to open or close (as the case may be) such Bank Account(s) or New Account(s).

**C.      The Debtors Should be Granted Authority to Continue to Use Existing Checks and Business Forms**

18.      Local Rule 2015-2(a) provides:

Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and a hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

19.      To minimize expenses to their estates, the Debtors seek authorization to continue using all checks substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession; provided, however, that in the event that the Debtors generate new checks during the pendency of these cases other than from their existing stock of checks, such checks will include a legend referring to the Debtors as "Debtor in Possession." The Debtors also seek authority to use all correspondence and other business forms without reference to the Debtors' status as debtors in possession.[4]

20.      Changing the Debtors' existing checks, correspondence and other business forms would be expensive, unnecessary and burdensome to the Debtors' estates. Further, such changes would be disruptive to the Debtors' operations and the orderly wind-down and liquidation of their assets, and would not confer any benefit upon those dealing with the Debtors. For these reasons, the Debtors request that they be authorized to use their existing check stock, all

---

[4]      Although the operating guidelines that have been established for debtors in possession by the United States Trustee would require the Debtors to obtain and use new checks bearing the "Debtor in Possession" designation, the Debtors do not believe that they impose any limitation on the Debtors' other correspondence and business forms. Nevertheless, out of an abundance of caution, the Debtors seek explicit authority to continue using their existing correspondence and business forms without reference to the Debtors' status as debtors in possession.

correspondence and other business forms without being required to place the label "Debtor in Possession" on any of the foregoing.

**D.      The Debtors Should Be Granted a Waiver of Certain Requirements of the United States Trustee**

21.      The Debtors further request, pursuant to Sections 105(a) and 363 of the Bankruptcy Code, that this Court grant a waiver of certain bank account and related requirements of the United States Trustee to the extent that such requirements are inconsistent with (a) the Debtors' existing practices under the Cash Management System or (b) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases. The United States Trustee has established certain operating guidelines for debtors in possession in order to supervise the administration of Chapter 11 cases. These requirements (each a "**UST Requirement**" and, collectively, the "**UST Requirements**") require Chapter 11 debtors to, among other things: (i) close all existing bank accounts and open new debtor-in-possession bank accounts; (ii) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor-in-possession account for cash collateral; and (iv) obtain checks for all debtor-in-possession accounts which bear the designation "Debtor In Possession," the bankruptcy case number and the type of accounts. These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations, and prevent the inadvertent postpetition payment of prepetition claims. As set forth above, the Debtors submit that (x) they are able to work with the Banks to ensure that this goal of separation between the prepetition and postpetition period is observed and (y) enforcing certain of these UST Requirements would disrupt the Debtors' operations and impose a financial burden on the Debtors' estates.

22.     To begin, as noted previously, it will be onerous for the Debtors to meet the requirement of closing all existing bank accounts and opening new debtor-in-possession bank accounts.  Further, requiring the Debtors to abide by the UST Requirement to establish specific debtor-in-possession accounts for tax payments (including payroll taxes) and to deposit to such specific tax accounts sufficient funds to pay any tax liability (when incurred) associated with the Debtors' payroll and other tax obligations would be unnecessarily burdensome.  The Debtors believe that the United States Trustee can adequately monitor the flow of funds into and out of the Bank Accounts, and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.

23.     Additionally, requiring the Debtors to abide by the UST Requirement to establish specific debtor-in-possession accounts for cash collateral is unnecessary.  The only encumbered cash the Debtors have is located in the Suntech America Restricted Account, which already is safeguarded to ensure that those who have interests in the cash held in the Suntech America Restricted Account are protected.  The Debtors have no access to such funds.  Further, as was the case prior to the Petition Date, the Debtors will not use the cash located in the Suntech America Restricted Account post-petition.

**E.     The Court Should Grant the Debtors an Extension of Time to Either Comply With the Deposit Requirements of 11 U.S.C. § 345(b) or to File a Motion Seeking to Waive Them**

24.     The Debtors further request that this Court grant the Debtors a sixty (60) day extension of time to either (i) comply with the requirements of Section 345(b) of the Bankruptcy Code or (ii) file a motion seeking to waive the requirements of Section 345(b) of the Bankruptcy Code, to the extent that either one or both actions is necessary in order for the Debtors to comply with Section 345(b) of the Bankruptcy Code, while, in the mean time, permitting the Debtors to

maintain their deposits in their accounts in accordance with their existing deposit practices as of the Petition Date.

25.     As this Motion is being filed on the first day of the Debtors' Chapter 11 cases, the Debtors respectfully submit that cause exists to grant an interim sixty (60) day extension of the requirements of section 345(b) of the Bankruptcy Code.  During that time the Debtors can consult with the United States Trustee in order to determine whether the Cash Management System is currently in compliance with the requirements of Section 345(b) of the Bankruptcy Code and/or whether the Debtors need to take any further action to bring the Cash Management System into compliance with the requirements of Section 345(b).

## APPLICABLE AUTHORITY

### A.     The Bankruptcy Code Permits the Debtors to Continue Using the Cash Management System and the Bank Accounts

26.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to use "property of the estate, in the ordinary course of business, without notice or a hearing."  11 U.S.C. § 363(c)(1).  The authority granted by Section 363(c)(1) of the Bankruptcy Code extends to a debtor in possession's continued use of its customary cash management system and, thus, supports the relief requested.  See, e.g., Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with Section 363(c)(1)) of the Bankruptcy Code).

27.     Section 105(a) of the Bankruptcy Code also authorizes this Court to permit the Debtors to continue using their existing Cash Management System and the Bank Accounts. Section 105(a) vests in this Court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The continuation of the Cash

Management System, including the continued use of the Bank Accounts, is essential to the Debtors' efforts to maximize the value of their estates and the efficient administration of these Chapter 11 Cases. Indeed, one court, in another context, has recognized that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993). The relief requested is, therefore, appropriate under Section 105(a) of the Bankruptcy Code. Indeed, bankruptcy courts routinely permit Chapter 11 debtors to continue using their existing cash management system, generally treating requests for such relief as a relatively "simple matter." In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also In re Columbia Gas Sys., Inc., 136 B.R. at 934.[5]

**B.    This Court Should Waive the UST Requirements to Permit the Debtors to Continue the Cash Management System**

28.    The continuation of the Cash Management System, as requested in this Motion, is consistent with the Debtors' authority to use property of the estate in the ordinary course of business pursuant to Section 363(c)(1) of the Bankruptcy Code. Accordingly, this Court should grant the Debtors a waiver of the UST Requirements to the extent that such requirements conflict with the Debtors' existing practices under the Cash Management System or any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases.

---

[5]    Numerous courts, including this Court, have authorized debtors to continue their existing cash management systems in other large Chapter 11 cases. See, e.g., In re Graceway Pharmaceuticals, LLC, Case No. 11-13036 (MFW) (Bankr. D. Del. Sept. 30, 2011); In re Appleseed's Intermediate Holdings LLC, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); In re Freedom Commc'ns Holdings, Inc., Case No. 09-13046 (BLS) (Bankr. D. Del. Sept. 2, 2009); In re Tribune Co., Case No. 08-13141 (Bankr. D. Del. April 30, 2009); In re Spansion Inc., Case No. 09-10690 (KJC) (Bankr. D. Del. March 23, 2009); In re Sportsman's Warehouse, Inc., Case No. 09-10990 (CSS) (Bankr. D. Del. March 23, 2009); In re Journal Register Co., Inc., Case No. 09-10769 (Bankr. S.D.N.Y. March 18, 2009); In re Star Tribune Holdings Corp., Case No. 09-10244 (RDD) (Bankr. S.D.N.Y. Feb. 6, 2009).

29.     Moreover, compelling the Debtors to alter their current cash management practices and to modify the Cash Management System to comply with the UST Requirements would risk disruption to the Debtors' businesses and the Debtors' ability to maximize value for all parties in interest. Cf. In re Gaylord Container Corp., 1993 WL 188671, at *3, 13 (E.D. La. May 24, 1993) (adopting the bankruptcy court's findings of fact and conclusions of law, which included a finding that the banking requirements of the Office of the United States Trustee for the District of Louisiana "represent a substantial burden on any debtor and, in this case, resulted in the incurrence of extraordinary unquantifiable costs by [the debtor] associated with the confusion engendered by the implementation of new policies and procedures to comply with such rules, and due to the substantial restrictions that such rules placed on [the debtor's] treasury functions"). This factor alone justifies the relief that the Debtors are seeking. See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

**C.     The Court Should Grant the Debtors an Extension of Time to Either Comply With the Deposit Requirements of 11 U.S.C. § 345(b) or to File a Motion Seeking to Waive Them**

30.     Section 345(a) of the Bankruptcy Code governs a debtor's deposit of cash during a Chapter 11 case and authorizes deposits of estate money that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit." 11 U.S.C. § 345(a).  If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Section 345(b) of the Bankruptcy Code requires the debtor to obtain from the entity with which the money is deposited a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety.  Id. § 345(b).  In the alternative, the estate may

14

require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303, which provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation. See 31 U.S.C. § 9303.

31.    Although the Debtors believe that all of the Bank Accounts are insured and guaranteed by the United States Federal Deposit Insurance Corporation, out of an abundance of caution, the Debtors seek a sixty (60) day extension of the time to comply with Section 345(b) of the Bankruptcy Code to the extent the Bank Accounts do not already comply with Section 345(b) of the Bankruptcy Code, without prejudice to the Debtors' ability to seek a further extension or final waiver of those requirements.  During the extension period, the Debtors propose to engage the United States Trustee in discussions to determine if compliance with Section 345(b) is necessary in the case at hand, and if necessary, if it is appropriate.  The Debtors believe that the benefits of the requested extension far outweigh any harm to the estates.  See generally In re Serv. Merchandise Co., Inc., 240 B.R. 894 (Bankr. M.D. Tenn. 1999).

32.    Although the Debtors believe that all of the Bank Accounts comply with Section 345(b), it is difficult at this time, without further analysis, to determine whether Section 345(b) is even applicable to the Bank Accounts.  Considering the Debtors' extremely limited liquidity and need to conserve cash, the Debtors submit that it would be an unnecessary drain of scarce estate resources to incur administrative expense at this time to comply with such requirement.  Accordingly, the Debtors submit that "cause" exists pursuant to Section 345(b) of the Bankruptcy Code to extend the time to comply with the requirements of the statute because it is unclear whether compliance with Section 345(b) is necessary in the case at hand.

33.     Based on the foregoing, the Debtors submit that the relief requested herein is necessary and appropriate, is in the best interests of their estates and all other interested parties, and should be granted in all respects.

**D.     Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should be Waived**

34.     Certain isolated aspects of the relief requested herein may, if granted, be subject to Bankruptcy Rule 6003.  Pursuant to Bankruptcy Rule 6003, a court may grant such relief if it is necessary to avoid immediate and irreparable harm.  The Debtors submit that facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and, thus, Bankruptcy Rule 6003 has been satisfied.

35.     Additionally, to the extent that any aspect of the relief sought herein constitutes a use of property under Section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors thus submit that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

**NOTICE**

36.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' twenty (20) largest unsecured creditors, as filed with the Debtors' chapter 11 petitions; (c) the local office for the Internal Revenue Service; and (d) all parties entitled to notice pursuant to Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is necessary.

**WHEREFORE,** the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit C**, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: January 12, 2015
      Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
William A. Romanowicz (No. 5794)
920 N. King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Facsimile: 302-651-7701
Email: collins@rlf.com
      heath@rlf.com
      shapiro@rlf.com
      romanowicz@rlf.com

*Proposed Counsel for Debtors and Debtors
in Possession*



**EXHIBIT A**

**Summary of Cash Management System**

Adequate Assurance Deposit Account (Acct. No. XXX9831)

Suntech America Bank of China Account (Acct. No. XXX0495)

Suntech America Restricted Account (Acct. No. XXX7482)

Suntech America Cash Account (Acct. No. XXX8137)

Proceeds from sale of inventory

Suntech Arizona Cash Account (Acct. No. XXX9815)

## EXHIBIT B

### Schedule of Bank Accounts

| Financial Institution | Address | Account Number(s) | Account Holder | Account Type |
|---|---|---|---|---|
| Bank of America, N.A. | 315 Montgomery Street San Francisco, CA 94104 | XXXXX8137 | Suntech America, Inc. | Checking |
| Bank of America, N.A. | 2129 Shattuck Ave. Berkeley, CA 94704 | XXXXX9815 | Suntech Arizona, Inc. | Checking |
| Bank of America, N.A. | 2129 Shattuck Ave. Berkeley, CA 94704 | XXXXX9831 | Suntech Arizona, Inc. | Checking |
| BridgeBank | 55 Almaden Boulevard San Jose, CA 95113 | XXXXX7482 | Suntech America, Inc. | Restricted Certificate of Deposit |
| Bank of China | 410 Madison Ave New York, New York 10007 | XXXXX0495 | Suntech America, Inc. | Checking |

## EXHIBIT C

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------  x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
SUNTECH AMERICA, INC., et al.,                          :    Case No. 15-_____ (____)
                                                        :
        Debtors.¹                                       :    Jointly Administered
                                                        :
------------------------------------------------------  x
```

## ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING
## CASH MANAGEMENT SYSTEM AND (II) GRANTING CERTAIN RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for an order, pursuant to Sections 105(a), 345, and 363 of the Bankruptcy Code, Bankruptcy Rule 6003 and Local Rule 2015-2, (i) authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management system, including maintenance of the Debtors' existing bank accounts, checks and business forms; (ii) granting the Debtors a waiver of certain bank account and related requirements of the United States Trustee to the extent that such requirements are inconsistent with (a) the Debtors' existing practices under the cash management system or (b) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Debtors' Chapter 11 cases; and (iii) granting the Debtors additional time to comply with Section 345 of the Bankruptcy Code including the related requirements of the United States Trustee; and the Court having reviewed the Motion and the First Day Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper and

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of the Debtors' federal tax identification numbers, are Suntech America, Inc. (9235) and Suntech Arizona, Inc. (0353).  The above-captioned Debtors' mailing address is 501 Second Street, Suite 575, San Francisco, California 94107.
[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED, as set forth herein.

2.      The Debtors are authorized to continue to use their existing Cash Management System and shall maintain through the use thereof detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Cash Management System, except as modified by this Order.  In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

3.      The Debtors are authorized to (a) designate, maintain and continue to use any and all Bank Accounts in existence as of the Petition Date, with the same account numbers, styles, and document forms as are currently employed, including but not limited to the accounts identified in the exhibits to the Motion, (b) if necessary, open new accounts wherever they are needed, whether or not such banks are designated depositories in the District of Delaware, (c) subject to the terms of this Order, deposit funds in, and withdraw funds from, the Bank Accounts in the usual and ordinary course, including checks, wire transfers, ACH transfers, drafts or other items presented, issued, or drawn on the Bank Accounts, (d) pay ordinary course bank fees in connection with the Bank Accounts, including any fees arising prior to the Petition Date, (e) perform their obligations under the documents and agreements governing the Bank Accounts, and (f) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as

debtors-in-possession; provided, however, that the Debtors may only open new Bank Accounts with banks that agree to be bound by the terms of this Order and, in particular, the Cash Management System. The Debtors are further authorized to close Bank Accounts in the ordinary course of business. To the extent the Debtors open or close Bank Accounts, they shall provide prompt notice to the United States Trustee, and counsel to any official committee appointed in these cases.

4.      Pursuant to Local Rule 2015-2(a), the Debtors are authorized to continue to use their existing checks and business forms without alteration or change and without the designation "Debtor in Possession" or a "debtor in possession case number" imprinted upon them; provided however, any new check stock ordered by the Debtors shall contain the designation "Debtor in Possession."

5.      The Debtors are authorized to continue to utilize all third-party providers necessary for the administration of their Cash Management System.

6.      *Nunc pro tunc* to the Petition Date, and subject to the terms of this Order, the Banks are authorized and directed, to the extent of available funds, to continue to administer, service and maintain the Bank Accounts as such accounts were administered, serviced and maintained prepetition, without interruption and in the ordinary course (including making deductions for bank fees), and to honor, and debit from Debtors' accounts in the ordinary course of business and without further Order of this Court, any and all checks, wire transfers, ACH transfers, electronic funds transfers or other items presented, issued or drawn on the Bank Accounts, in respect of any amounts owing other than with respect to chargebacks on account of Returned Items (defined below) related to such Bank Accounts; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers (excluding any

3

electronic funds transfer that any Bank is obligated to settle) or other items presented, issued or drawn on the Bank Accounts prior to the Petition Date shall be honored.

7.      Each Bank that maintains a disbursement account shall implement reasonable handling procedures designed to effectuate the terms of this Order.  No Bank that implements such handling procedures and then honors a prepetition check, wire transfer, ACH transfer or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in the good-faith belief that the Court has authorized such prepetition check, wire transfer, ACH transfer, electronic funds transfer, or other item to be honored, or (c) as a result of a good faith error made despite implementation of such handling procedures, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order.

8.      Subject to the provisions of this Order, the Banks are authorized and directed to honor all representations from the Debtors as to which checks, wire transfers, ACH transfers or other items should be honored or dishonored; provided, however, in the course of providing cash management services to the Debtors, the Banks are authorized, without further Order of this Court, to deduct from the appropriate Bank Accounts of the Debtors its bank fees, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including without limitation, returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind (collectively, "**Returned Items**"), regardless of whether such items were deposited or transferred pre-prepetition or post-petition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

9.      For banks at which the Debtors hold accounts that are party to a Uniform Depository agreement with the United States Trustee, within fifteen (15) days of the date of entry

of this Order, the Debtors shall (a) contact each bank, (b) provide each of the Debtors' employer identification numbers and (c) identify each of their accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

10.    For Banks at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within sixty (60) days of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

11.    The Debtors are authorized to implement such reasonable changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Bank Accounts or opening any additional Bank Accounts following the Petition Date (the "**New Accounts**"), wherever the Debtors deem that such accounts are needed or appropriate, and whether or not the banks in which the accounts are opened are designated depositories in the District of Delaware.  Notwithstanding the foregoing, any New Account that the Debtors open will be (a) with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (b) designated a "Debtor in Possession" account by the relevant bank. The New Accounts are deemed to be Bank Accounts and are similarly subject to the rights, obligations, and relief granted in this Order.  The Debtors shall provide the United States Trustee and counsel to any official committee appointed in these cases with prompt notice

of any New Accounts that are opened.  The Banks are authorized to honor the Debtors' requests to open or close (as the case may be) any Bank Account(s).

12.      The Debtors shall have 60 days (or such additional time as the United States Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to either come into compliance with Section 345(b) of the Bankruptcy Code or to make such other arrangements as agreed with the United States Trustee.  Such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or a final waiver of the requirements of Section 345(b) of the Bankruptcy Code.

13.      Notwithstanding anything herein to the contrary, those certain existing deposit agreements between Debtors and the Banks shall continue to govern the postpetition Cash Management System between the Debtors and the Banks, and all of the provisions of such agreements, including without limitation, the termination and fee provisions, shall remain in full force and effect.

14.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

15.      The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

16.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2015
           Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 11364746v.1