## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x
In re:                                                   :    Chapter 11
                                                         :
SUNTECH AMERICA, INC., et al.,                           :    Case No. 15-10054 (CSS)
                                                         :
         Debtors.[1]                                     :    Jointly Administered
                                                         :
                                                         :    **(Proposed) Hearing: May 11, 2015 at 11:00 a.m.**
-------------------------------------------------------- x    **(Proposed) Obj. Deadline: May 7, 2015 at 12:00 p.m.**

## DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING SUNTECH ARIZONA, INC. TO SELL CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

Suntech America, Inc. ("**Suntech America**") and Suntech Arizona, Inc. ("**Suntech Arizona**"), the debtors and debtors in possession in the above-captioned cases (together, the "**Debtors**"), hereby submit this motion (this "**Motion**"), pursuant to Section 363 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order (the "**Sale Order**"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing Suntech Arizona to sell the Assets (as defined below) pursuant to that certain Asset Purchase Agreement, dated April 24, 2015 (the "**APA**"),[2] between Suntech Arizona and Deltro Electric Ltd. (the "**Purchaser**"), free and clear of all liens, claims, encumbrances and other interests to the Purchaser (the "**Sale**") and (ii) granting certain related relief.  In support of this Motion, the Debtors respectfully state as follows:

---

[1]      The Debtors in these Chapter 11 Cases, along with the last four digits of the Debtors' federal tax identification numbers, are Suntech America, Inc. (9235) and Suntech Arizona, Inc. (0353).  The Debtors' mailing address is 501 Second Street, Suite 575, San Francisco, CA 94107.

[2]      A true and correct copy of the APA is attached to the Sale Order as **Exhibit 1** thereto.

## JURISDICTION

1.      The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.      Venue of these proceedings and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### I.      General Background

3.      On January 12, 2015 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Robert Moon in Support of Chapter 11 Petitions and First Day Motions* [D.I. 8] (the "**First Day Declaration**"), which is fully incorporated herein by reference.

4.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested or appointed in the Chapter 11 Cases. On January 22, 2015, the Office of the United States Trustee (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**").

### II.      Specific Background

5.      As is set forth in greater detail in the First Day Declaration, prior to ceasing production in April 2013, Suntech Arizona manufactured photovoltaic ("**PV**") modules at a facility leased by Suntech Arizona and located in Goodyear, Arizona (the "**Goodyear Facility**"). While Suntech Arizona no longer manufactures PV modules at the Goodyear

-2-

Facility, Suntech Arizona continues to own the manufacturing equipment and certain other related assets that are housed at such facility (the "**Assets**") and remains a party to (and thus obligated under) the lease relating to such facility.  Because Suntech Arizona has no use for the Assets, it has been seeking a purchaser for such assets since March 2014.

6.      As a result of those efforts, on December 23, 2014, Suntech Arizona and Vasari Energy North America Inc. ("**Vasari**") entered into that certain Asset Purchase Agreement, dated December 23, 2014 (as amended, the "**Vasari APA**"), whereby Suntech Arizona would sell the Assets to Vasari for $900,000.  Pursuant to paragraph 7 of the Vasari APA, Vasari had the option to automatically terminate the Vasari APA by sending written notice to the Debtors.

7.      On January 19, 2015, the Debtors filed the *Motion of Debtors for an Order Authorizing Suntech Arizona, Inc. to Sell Certain Assets Free and Clear of All Liens, Claims and Encumbrances* [D.I. 32] (the "**Vasari Sale Motion**") seeking to sell the Assets to Vasari under the terms of the Vasari APA.  The Vasari Sale Motion was originally set to be heard on February 9, 2015.

8.      Three days later, on January 22, 2015, the U.S. Trustee appointed the Committee.  The Committee selected Sheppard Mullin Richter & Hampton, LLP and Pepper Hamilton LLP as its counsel and FTI Consulting, Inc. ("**FTI**") as its financial advisor.

9.      Almost immediately upon being appointed, the Committee requested that the Debtors adjourn the hearing on the Vasari Sale Motion so that the Debtors, with FTI's assistance, could establish informal bidding procedures (the "**Bidding Procedures**")[3] with the

---

[3]      The Bidding Procedures that were agreed to between the Debtors and the Committee are attached to the APA as **Exhibit B** thereto.  The Bidding Procedures have not been approved by this Court and, by this Motion, the Debtors are not seeking approval of such procedures.

hope that implementing such procedures would result in bids that were higher and otherwise better than Vasari's bid for the Assets.

10.    Meanwhile, on March 12, 2015, Vasari sent written notice to counsel for the Debtors terminating the Vasari APA in accordance with its terms.  As a result, on March 13, 2015, the Debtors withdrew the Vasari Sale Motion.  See D.I. 139.  Thereafter, the Debtors, the Committee and their professionals continued soliciting bids for the Assets and, on or around March 23, 2015, FTI distributed, among other things, a form asset purchase agreement and the Bidding Procedures to parties that previously expressed an interest (including, among others, Vasari), or that might express an interest, in acquiring the Assets.

11.    As part of that process, the Debtors and the Committee received bids and indications of interest from several parties that were interested in acquiring the Assets, including the Purchaser.  After analyzing such bids and indications of interests and, pursuant to the Bid Procedures, soliciting each interested party for higher and better bids and negotiating with certain parties (including the Purchaser and Vasari), the Debtors, in consultation with the Committee, selected the Purchaser's bid as the highest and otherwise best bid for the Assets.  On April 24, 2015, Suntech Arizona entered into the APA with the Purchaser.  The APA provides for a purchase price of $555,000 (the "**Purchase Price**").

## THE SALE

12.    The Debtors believe that the Sale is in the best interests of their estates and stakeholders.  Having ceased manufacturing operations at the Goodyear Facility more than two (2) years ago, Suntech Arizona has no use for the Assets.  Thus, the Sale will allow Suntech Arizona to monetize the Assets for the benefit of its estate and stakeholders.  Additionally,

Suntech Arizona continues to pay rent pursuant to the lease for the Goodyear Facility in order to continue to store the Assets.

13.     In addition, the APA obligates the Purchaser to either enter into a new lease for the Goodyear Facility or remove the Assets from the Goodyear Facility upon the Closing Date (as defined in the APA).  *See* APA at § 11.  This provision in the APA enables the Debtors to reject the lease for the Goodyear Facility so that the Purchaser can enter into a new lease with the landlord for such facility.  Upon information and belief, the Purchaser and the landlord for the Goodyear Facility have entered into an agreement, in principal, for a new, short term lease for use of the Goodyear Facility.  Accordingly, Suntech Arizona will be able to eliminate its administrative lease obligations from and after the Closing Date by rejecting the lease effective immediately upon the Closing Date, which, in turn, will inure to the benefit of the Debtors and their stakeholders.[4]

14.     Further, the Debtors also believe that the Purchase Price is fair and reasonable and represents the highest and best offer for the Assets as a result of the combined and continuous efforts of the Debtors and the Committee to market and sell the Assets.  Such efforts began well before the Petition Date and have continued in earnest since that time.  As such, the Debtors and the Committee do not believe that holding a public auction process for the Sale of the Assets will result in a higher and otherwise better offer.  Nonetheless, the Debtors will provide notice of this Motion, including the APA, to all known parties that expressed an interest in acquiring the Assets and, in consultation with the Committee, will entertain any higher and better offers for the Assets which may be received by the parties prior to the Closing Date.

---

[4]     The Debtors and the landlord for the Goodyear Facility have also agreed, in principal, that Suntech Arizona will pay its *pro rata* share of the rent for May 2015 through the Closing Date and that the lease for the Goodyear Facility will be rejected upon the Closing Date.

## REQUIRED DISCLOSURES PURSUANT TO LOCAL RULE 6004-1[5]

15.     In accordance with Local Rule 6004-1, certain terms of the APA are described below:

a.     **Assets**.  The Assets include the assets located at the Premises and used in, held for use in, or relating to the Business as set forth on **Exhibit A** thereto.  The Assets do not comprise any other assets, including, but not limited to, any of the Seller's causes of action, cash or accounts receivable.  The Assets also do not include books and records that the Seller needs in order to administer its Chapter 11 case. **[APA § 1]**

b.     **Private Sale**.  As set forth herein, the Seller and the Committee submit that the terms memorialized in the APA constitute the highest and otherwise best offer for the Assets.  While the Seller and the Committee conducted an informal bidding and auction process pursuant to the Bidding Procedures, the Seller and the Committee do not believe that conducting a formal auction with respect to the Assets would result in a higher and otherwise better offer.  Accordingly, the Seller intends to sell the Assets without conducting a public auction process.

c.     **Closing Deadline**.  Closing will occur no later than the later of May 15, 2015 at 4:00 p.m. Eastern time, or on that date which is the first business day after the Sale Hearing (as defined in **Exhibit B** to the APA), unless otherwise agreed, in writing, by the Seller and the Purchaser. [**APA § 10**]

d.     **Good Faith Deposit**.  Under the Bidding Procedures, on April 8, 2015, the Purchaser wired $58,000 to counsel to the Debtors as a good faith deposit (the "**Deposit**").[6]  At Closing, the Deposit will be applied to the Purchase Price.  If the Closing does not occur, the Seller will return the Deposit to the Purchaser within five (5) business days of occurrence of the earlier of: (i) the date on which the determination is made that the Purchaser has not made the Best Offer for the Assets; or (ii) notice from the Seller that it is unable to meet all of the condition(s) to Closing, including without limitation, approval of the APA by the Bankruptcy Court.

---

[5]     Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to such terms in the APA.

[6]     At the time the Deposit was made, the Purchaser had submitted an asset purchase agreement for the Assets that provided for a purchase price of $580,000.  Thus, the Deposit represents ten percent (10%) of that amount. Since that time, as a result of further negotiations between the Purchaser, on the one hand, and the Seller and the Committee, on the other hand, the Purchaser reduced such purchase price to $555,000, to account for the Purchaser's agreement to enter into a new lease for the Premises which will inure to the benefit of the Seller's estate and stakeholders.

e.    **Relationship with the Purchaser**.  The Purchaser is not an insider (as defined in Section 101(31) of the Bankruptcy Code) of either of the Debtors.

f.    **Relief from Bankruptcy Rule 6004(h)**.  Pursuant to paragraph 8 of the Sale Order, the Debtors seek a waiver of the fourteen-day (14) stay imposed by Bankruptcy Rule 6004(h).

## RELIEF REQUESTED

16.    By this Motion, the Debtors seek entry of the Sale Order, effective immediately upon entry, (i) authorizing the Sale of the Assets to the Purchaser pursuant to the APA free and clear of all liens, claims, encumbrances, and other interests, and (ii) granting related relief.

## BASIS FOR RELIEF

**I.    The Sale of the Assets is a Sound Exercise of Suntech Arizona's Business Judgment**

17.    Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

18.    The decision to sell property of the estate outside the ordinary course of business is entrusted to the sound business judgment of the debtor.  See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that to obtain court approval to sell property under Section 363(b), a debtor must show a "sound business reason" for the proposed action); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale); In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (same).

19.     Where the "debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is a strong presumption that a debtor acted "in good faith and in the honest belief that the action taken was in the best interests of the company."  In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)), appeal dismissed, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.  Id. (citing Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).

20.     Suntech Arizona's decision to sell the Assets pursuant to the APA is based upon an exercise of its sound business judgment.  Given the extensive marketing process that occurred both prior to, and after, the Petition Date, the competitive bidding process undertaken in connection with the most recent marketing efforts (as outlined in the Bidding Procedures), and the negotiations undertaken by the Debtors, the Committee, and each of their professionals, the Debtors believe that the Sale to the Purchaser for $555,000 represents the highest and otherwise best offer for the Assets.

21.     Additionally, the Sale to the Purchaser will facilitate a quick and efficient disposition of the Assets.  Suntech Arizona is no longer operating and therefore has no further use for the Assets.  A further prolonged sale process, other than the Sale, will be to the detriment of Suntech Arizona and its estate and stakeholders because such process may depress the purchase price for the Assets and will result in Suntech Arizona incurring additional lease obligations with respect to the Goodyear Facility.

RLF1 11872774v.1

22. Accordingly, the Sale is in the best interests of Suntech Arizona's estate and stakeholders because, among other things, it (i) assists the Debtors in monetizing assets that the Debtors are not using, and (ii) will allow Suntech Arizona to exit the Goodyear Facility and thus eliminate the administrative lease obligations associated with maintaining the lease at such facility. Based on the foregoing, the Debtors submit that the Sale of the Assets to the Purchaser pursuant to the APA is -- without a doubt -- a sound exercise of Suntech Arizona's business judgment.

## II.    A Sale Free and Clear of Liens, Claims and Encumbrances is Appropriate

23. The Debtors further submit that it is appropriate for the Assets to be sold free and clear of all liens, claims, encumbrances and other interests pursuant to Section 363(f) of the Bankruptcy Code. Pursuant to Section 363(f) of the Bankruptcy Code, a debtor may sell property under Bankruptcy Code section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied:

(1)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because Section 363(f) is stated in the disjunctive, when selling property of the estate, it is only necessary to meet one of the five conditions listed in that section. See Folger

Adam Sec. Inc. v. De Matteis/MacGregor, JV, 209 F.3d 252, 257 (3d Cir. 2000) (noting that a debtor is authorized to sell property free and clear of "any interest" if any one of the five prescribed conditions under section 363(f) is met; In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citing Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988).

24.    The Debtors do not believe that any liens, claims or other encumbrances exist on the Assets.  Nonetheless, with respect to any party asserting a lien, claim, encumbrance, or other interest against the Assets, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in Section 363(f).  Thus, the Sale of the Assets free and clear of liens, claims, and encumbrances will satisfy the statutory prerequisites of Section 363(f) of the Bankruptcy Code.

**III.    The Purchaser Should be Entitled to the Protections of Section 363(m)**

25.    Pursuant to Section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  See In re Abbotts Dairies, 788 F.2d at 147; In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir. 1993); In re Willemain V. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985).

26.    The Debtors request a finding that the Purchaser is a good faith purchaser entitled to the protections of Section 363(m).  The terms and conditions of the APA were negotiated by Suntech Arizona and the Purchaser at arm's length and in good faith.  The Purchaser was represented by counsel and the Debtors do not believe that the Purchaser engaged in any conduct that would indicate or constitute a lack of good faith.  See In re Gucci, 126 F.3d 380, 392 (2d Cir. 1997) ("Good faith of a purchaser is shown by the integrity of his conduct

during the course of sale proceedings . . . ."); In re Tempo Tech. Corp., 202 B.R. 363, 367 (D. Del. 1996) (stating that a purchaser's good faith status would be destroyed only by conduct involving "'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'") (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).  Accordingly, the Debtors believe that the Purchaser is entitled to the protections that Section 363(m) of the Bankruptcy Code provides to good faith purchasers.

## IV.    No Auction of the Assets is Required

27.    Bankruptcy Rule 6004(f)(1) permits private sales or sales conducted without an auction.  Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction.").  Further, courts have generally held that a debtor has broad discretion in determining the manner in which assets are sold.  Berg v. Scanlon (In re Alisa P'ship), 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of sale is within the discretion of the trustee . . . ."); In re Bakalis, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has "'ample discretion to administer the estate, including authority to conduct public or private sales of estate property.'") (citing In re WPRV-TV, Inc., 143 B.R. 315, 319 (D.P.R. 1991)).  As long as a debtor maximizes the return to its estate, a court should defer to a debtor's business judgment regarding how to structure an asset sale.  Bakalis, 220 B.R. at 532 (recognizing that although a trustee's business judgment enjoys great judicial deference, a duty is imposed on the trustee to maximize the value obtained from a sale); In re NEPSCO, Inc., 36 B.R. 25, 26 (Bankr. D. Me. 1983) ("Clearly, the thrust of th[e] statutory scheme [governing 363 sales] is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, i.e., the creditors of the estate.").  Accordingly, if Suntech Arizona concludes that conducting a private sale, as opposed to a public auction, is in the best interests of its estate, Suntech Arizona should be permitted to do so.  See Penn Mut. Life Ins. Co. v.

-11-

Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship), 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

28.     Suntech Arizona's decision to pursue the Sale without a public auction is supported by the fact that the Debtors and the Committee have fully explored -- over the course of several months -- potential sales of the Assets with a variety of interested parties.  As such, the Sale was a result of a collaborative effort by the Debtors and the Committee which focused on maximizing the value of the Assets through a fair, good faith process designed to benefit all parties in interest.  The Debtors, the Committee and each of their professionals have used their best efforts to negotiate and finalize the APA, and Suntech Arizona, in the sound exercise of its business judgment, firmly believes that it has identified the highest and otherwise best bid for the Assets.  Given the fulsome marketing process to date, undertaking a public auction for the Assets would be unlikely to produce additional bids for the Assets and would needlessly duplicate the previous efforts expended by the Debtors and the Committee.  As such, a public auction process would not benefit the estate and, if fact, would result in significant additional expenses and the incurrence of additional lease obligations to the detriment of the Suntech Arizona and its estate.

29.     Nonetheless, consistent with the Debtors' fiduciary duties to ensure the greatest return to stakeholders and the estate, the Debtors, in consultation with the Committee, will entertain any higher and better offers for the Assets to the extent they are received prior to the Closing Date.  Any parties interested in acquiring the Assets should contact, via email, the following parties: (i) the Debtors, Attn: Robert Moon, Email: rmoon@qbpartners.net; (ii) Debtors' counsel, Richards, Layton & Finger, P.A., Attn: Mark D. Collins, Paul N. Heath and Zachary I. Shapiro, Email: collins@rlf.com; heath@rlf.com; shapiro@rlf.com; (iii) the

Committee's counsel, Sheppard, Mullin, Richter & Hampton LLP, Attn: Craig Wolfe and Malani Cademartori, Email: cwolfe@sheppardmullin.com; mcademartori@sheppardmullin.com; and (iv) the Committee's financial advisor, FTI Consulting, Inc., Attn: Connor Tully and Christopher LeWand, Email: Conor.Tully@fticonsulting.com; Chris.LeWand@fticonsulting.com. The Debtors retain the right to determine, in consultation with the Committee, the highest or otherwise best offer.

## **WAIVER OF BANKRUPTCY RULE 6004**

30.    The Debtors seek to close the Sale as promptly as possible in order to preserve and maximize the recovery thereunder and to minimize any administrative liability with respect to the lease of the Goodyear Facility. Accordingly, the Debtors request that any order approving the Sale be effective immediately by waiving any stay pursuant to Bankruptcy Rule 6004.

## **NOTICE**

31.    Notice of this Motion shall be provided to (collectively, the "**Notice Parties**"): (a) the U.S. Trustee; (b) counsel to the Committee; (c) the local office for the Internal Revenue Service; (d) all entities known to have expressed an interest in a transaction with respect to the Assets; (e) all parties asserting a security interest in the Assets, if any; (f) the Federal Trade Commission; (g) the United States Attorney General/Antitrust Division of the Department of Justice; (h) the Purchaser; (i) local and state environmental and taxing authorities and the Environmental Protection Agency; (j) the United States Department of Commerce; (k) the landlord of the Goodyear Facility; and (l) those parties who have requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no other or further notice is necessary.

## NO PRIOR REQUEST

32.     Except with respect to the Vasari Sale Motion, no previous request for the

relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form of the Sale Order attached hereto as **Exhibit A**, granting the relief

requested in the Motion and such other and further relief as may be just and proper.

Dated:  April 26 2015                        RICHARDS, LAYTON & FINGER, P.A.
           Wilmington, Delaware


                                             /s/ *Zachary I. Shapiro*
                                             Mark D. Collins (No. 2981)
                                             Paul N. Heath (No. 3704)
                                             Zachary I. Shapiro (No. 5103)
                                             Joseph C. Barsalona II (No. 6102)
                                             920 N. King Street
                                             Wilmington, Delaware 19801
                                             Telephone: 302-651-7700
                                             Facsimile: 302-651-7701
                                             Email: collins@rlf.com
                                                     heath@rlf.com
                                                     shapiro@rlf.com
                                                     barsalona@rlf.com

                                             *Counsel for Debtors and Debtors in
                                             Possession*