**Exhibit A**

**Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :
SUNTECH AMERICA, INC., et al.,                               :    Case No. 15-10054 (CSS)
                                                             :
        Debtors.[1]                                   :    Jointly Administered
                                                             :
                                                             x    **Re: Docket No. \_\_\_**
------------------------------------------------------------

**ORDER AUTHORIZING THE SALE
OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

Upon the motion (the "**Motion**"),[2] of the Debtors, pursuant to Section 363 of the Bankruptcy Code, Rules 2002 and 6004 of the Bankruptcy Rules and Local Rule 6004-1, for authorization for Suntech Arizona to consummate the Sale of the Assets to Deltro Electric Ltd. (the "**Purchaser**"), as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties and no further notice being necessary; and the relief requested in the Motion being in the best interests of the Debtors and their stakeholders and estates; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor, it is

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of the Debtors' federal tax identification numbers, are Suntech America, Inc. (9235) and Suntech Arizona, Inc. (0353). The Debtors' mailing address is 501 Second Street, Suite 575, San Francisco, CA 94107.

[2]     Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Motion.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The APA, substantially in the form attached hereto as **Exhibit 1**, and all of the terms and conditions thereof, are approved. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision.

3. Pursuant to Section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to perform under, consummate and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and to take all further actions as may be reasonably required for the purpose of assigning, transferring, granting, conveying and conferring the Assets to the Purchaser or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

4. Pursuant to Section 363(f) of the Bankruptcy Code, the Sale shall be free and clear of any and all liens, claims and encumbrances against the Assets, with such liens, claims and encumbrances, if any, attaching to the proceeds of the Sale with the same force, effect, and priority as such liens, claims and encumbrances, if any, have on the Assets, as appropriate.

5. The transactions contemplated by the APA are undertaken by the Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale of the Assets to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

6. The consideration provided by the Purchaser for the Assets under the APA is

fair and reasonable and may not be avoided under Section 363(n) of the Bankruptcy Code.

       7.       The rights and defenses of the Debtors and any other party in interest with respect to whether any assertion that any liens, claims and encumbrances, if any, will attach to the proceeds of the Sale hereby are preserved.

       8.       Any stay under Bankruptcy Rule 6004 (to the extent applicable) is hereby waived.

       9.       This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2015
       Wilmington, Delaware

                         _____
                         THE HONORABLE CHRISTOPHER S. SONTCHI
                         UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1**

**The APA**

EXECUTION COPY

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is made as of April 24, 2015 (the "Effective Date"), by and between Suntech Arizona, Inc., a Delaware corporation, having an address at 3801 S. Cotton Lane, Goodyear, AZ 85338 ("Seller"), and Deltro Electric Ltd., a, having an address at 1706 Mattawa Ave, Mississauga Ontario Canada ("Purchaser").

WHEREAS, Seller has been engaged in the production of solar panels (the "Business") at a manufacturing facility located at Suite F of the Goodyear One building, 3801 South Cotton Lane, Goodyear, AZ 85338 (the "Premises");

WHEREAS, on January 12, 2015 (the "Petition Date"), Seller filed for chapter 11 relief under title 11 of the United States Code (the "Bankruptcy Code"), and continues to manage and operate its business, as it did prior to the Petition Date, as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code;

WHEREAS, Seller's bankruptcy case is jointly administered under Case No. 15-10056 (the "Bankruptcy Cases") with the chapter 11 case of its affiliated debtor, Suntech America, Inc. (with the Seller, the "Debtors"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on January 22, 2015, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") in the Bankruptcy Cases;

WHEREAS, Seller has outlined a process, and Purchaser acknowledges receipt of notice of such process, whereby the assets of Seller are subject to an informal bidding process as provided for on **Exhibit B** hereto (the "Bid Process");

WHEREAS, Purchaser desires to purchase, and Seller desires to sell, subject to the Bid Process, substantially all of the assets of Seller used in the Business, on the terms and subject to the conditions contained in this Agreement; and

NOW, THEREFORE, for and in consideration of the mutual covenants, agreements, representations and warranties contained in this Agreement and for other good and valuable consideration, the parties agree as follows:

1.  **Purchase of Assets.**  Subject to Bankruptcy Court approval, and on the terms and subject to the conditions and other provisions set forth in this Agreement, including, without limitation, the Bid Process, Seller hereby sells to Purchaser, and Purchaser hereby purchases from Seller, free and clear of all interests, liens, claims and encumbrances (collectively, the "Liens"), all of Seller's right, title and interest in and to its assets located at the Premises and used in, held for use in, or relating to the Business as set forth on **Exhibit A** attached hereto (the "Assets").  No other assets, including, without limitation, any causes of action, cash, or accounts receivable, of the Business or Seller shall be transferred to Purchaser other than as expressly set forth on **Exhibit A** hereto.

**2.     Purchase Price.**  In consideration for the sale, transfer and assignment by Seller of all of Seller's right, title and interest in and to the Assets, and in consideration of the representations and warranties of Seller set forth herein, Purchaser shall pay Seller the aggregate amount of U.S. $555,000.00 (five-hundred fifty-five thousand dollars and no cents) (the "Purchase Price"), less the application of the Deposit, in immediately available funds on the Closing Date (defined below).

**3.     "AS IS" Transaction**.  Purchaser hereby acknowledges and agrees that, except as otherwise set forth in this Agreement, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assets (including, without limitation, income to be derived or expenses to be incurred in connection with the Assets, the transferability of the Assets, or any other matter or thing relating to the Assets or any portion thereof).  Purchaser further acknowledges that, at or prior to the Closing Date, Purchaser shall have conducted an independent inspection, review, examination and investigation of the Assets and all matters relating thereto as Purchaser deemed necessary or appropriate and that in proceeding with its acquisition of the Assets, with the exception of the representations set forth expressly herein, Purchaser shall do so based solely upon such independent inspection and investigation.  Accordingly, except for such representations and warranties set forth herein, Purchaser will accept the Assets on the Closing Date "**AS IS**"**,** "**WHERE IS,**" and "**WITH ALL FAULTS.**"

**4.     Sale Free and Clear.**  Seller acknowledges and agrees that the Sale Order (defined below) shall provide that, on the Closing Date, and concurrently therewith, all then existing or thereafter arising Liens on, against or in the Assets, to the fullest extent permitted by section 363 of the Bankruptcy Code, shall be fully released from and with respect to the Assets.

**5.     Representations of Purchaser.**  Subject to entry of the Sale Order, Purchaser represents and warrants to Seller that the following representations are true, accurate and complete as of the date hereof:

     5.1     Organization and Standing.  Purchaser is a Corporation duly organized, validly existing and in good standing under the laws of the Province of Ontario, Canada– and has all corporate powers and all material governmental licenses, authorizations, permits, consents and approvals required to carry on its business as now conducted and to enter into this Agreement and the transactions contemplated thereunder. Authority.  Purchaser has all requisite corporate power and authority to enter into this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby.  All corporate acts and other proceedings required to be taken by Purchaser to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby to be consummated by Purchaser have been duly and properly taken.  This Agreement has been duly executed and delivered by Buyer and constitutes a legal, valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms.No Conflicts.  The execution and delivery of this Agreement by Purchaser do not, and the consummation of the transactions contemplated hereby and compliance with the terms hereof will not, conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation, modification or acceleration of any obligation under, any provision of (i) the organizational documents  and/or bylaws of Purchaser or other

comparable governing instruments of Purchaser, as the case may be, or the comparable governing instruments of any subsidiary of Purchaser or (ii) any judgment, injunction, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer or its assets.Consents.  No material consent, approval, grant, concession, agreement, franchise, license, permit, order or authorization of, or registration, declaration or filing with, any governmental entity is required to be obtained or made by or with respect to Purchaser or its affiliates in connection with the execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby, other than compliance with any notices, motions, orders or approvals required by the Bankruptcy Court or the Bankruptcy Code and the rules thereunder.Availability of Funds.  Purchaser has cash available and sufficient to enable Purchaser to consummate the purchase of the Assets and all other transactions and actions contemplated by this Agreement in a timely manner. **Representations of Seller.**  Subject to entry of the Sale Order, Seller represents and warrants to Purchaser that the following representations and warranties are true, accurate and complete as of the date hereof:

  6.1 Organization and Standing.  Seller is a corporation duly organized and validly existing and in good standing under the laws of Delaware and has all corporate powers and all governmental licenses, authorizations, permits, consents and approvals required to enter into this Agreement and the transactions contemplated thereunder.

  6.2 Authority.  Subject to approval by the Bankruptcy Court, (a) all corporate acts and other proceedings required to be taken by Seller to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby have been duly and properly taken and (b) this Agreement has been duly executed and delivered by Seller and constitutes a legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms.

  6.3 Consents.  No material consent, approval, grant, concession, agreement, franchise, license, permit, order or authorization of, or registration, declaration or filing with, any governmental entity, if any, is required to be obtained or made by or with respect to Seller in connection with the execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby, other than compliance with any notices, motions, orders or approvals required by the Bankruptcy Court or the Bankruptcy Code and the rules thereunder

  6.4 Sufficiency of and Title to the Assets.  As of the Closing Date, Seller has good and marketable title to each of the Assets.  None of the Assets are subject to any pending actions relating to competing claims to title.

  6.5 No Warranties.  Except as expressly provided herein, neither Seller nor any other person makes any express or implied representation or warranty on behalf of Seller.  ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXCLUDED FROM THE SALE AND TRANSFER OF THE ASSETS.  THE FOREGOING PROVISION DOES NOT AFFECT THE VALIDITY OF THE REPRESENTATIONS AND WARRANTIES PRIOR TO CLOSING, IT BEING THE INTENTION OF EACH OF THE PARTIES (SELLER, ON THE ONE HAND, AND, PURCHASER, ON THE OTHER) THAT THE ACCURACY OF

THE REPRESENTATIONS AND WARRANTIES IS A CONDITION TO THE OTHER PARTY'S OBLIGATIONS HEREUNDER.

**7.     Bid Process.**  The Bid Process attached hereto as **Exhibit B** shall be incorporated into this Agreement as if fully set forth herein.

**8.     Pre-Closing Activities.**  During the period following written confirmation that the Purchaser's bid for the assets is chosen as the Best Offer (as defined in the Bid Process attached hereto as **Exhibit B**) for the Assets through the Bid Process and prior to Closing, Seller will: (i) provide Purchaser with access to all available documents relating to the Assets as Purchaser reasonably requests, including but not limited to equipment specifications, maintenance and repair records, and warranties, and any and all plans and diagrams for the Premises; and (ii) make the Premises available for Purchaser's engineers and consultants during normal business hours and upon reasonable notice.  Notwithstanding the foregoing provisions of this paragraph, which are provided for the purpose of facilitating Purchaser's removal and reutilization of the Assets, there shall be no due diligence conditions to Closing.

**9.     Conditions to Closing.**  Closing under this Agreement shall be conditioned on of the following: (a) that the Purchaser's bid submitted pursuant to this Agreement and the Bid Process, and as may be amended as a result of the Bid Process, is chosen as the Best Offer for the Assets; and (b) entry of an order by the Bankruptcy Court approving the sale of the Assets by Seller to Purchaser pursuant to a motion filed by the Debtors in consultation with and in a form as agreed upon by the Purchaser and the Committee, and approved by the Bankruptcy Court, which order shall not be stayed and shall have become a final order.  Seller agrees to return the Deposit to the Purchaser within five (5) business days of occurrence of the earlier of: (i) the date on which the determination is made that the Purchaser has not made the Best Offer for the Assets; or (ii) notice from the Seller that it is unable to meet all of the condition(s) to Closing, including without limitation, approval of this Agreement by the Bankruptcy Court.

**10.    Closing.**

10.1    The closing of the sale of the Assets (the "<u>Closing or Closing Date</u>") shall occur no later than May 15, 2015, 4:00 p.m. Eastern Time, and on that date which is the first business day after the Sale Hearing (as defined in **Exhibit B** attached hereto), unless otherwise agreed, in writing, by the parties hereto.  At Closing, (i) Purchaser shall wire transfer the Purchase Price, after application of the Deposit (made pursuant to and as defined in the Bid Process) to the Purchase Price, in immediately available funds to an account designated in writing by Seller; and (ii) Seller shall deliver a Bill of Sale evidencing the conveyance of the Assets from Seller to Purchaser in the form attached hereto as **Exhibit C**.

**11.    Premises Lease**.

11.1    If Purchaser does not intend to assume the lease for the Premises, dated January 19, 2010, by and between Duke Realty Limited Partnership ("<u>Lessor</u>") and the Seller (the "<u>Lease</u>"), Purchaser must provide written notice to the Debtors and the Committee of its intention to enter into a new lease for the Premises in order to remove the Assets from the

Premises together with submission and execution of this Agreement by the Closing Date which new lease shall be effective as of no later than May 16, 2015.

**12.** **Notice.** All notices or other communications required or permitted to be given hereunder shall be in writing and shall be delivered by hand, sent by confirmed fax or sent, postage prepaid, by registered, certified or express mail or reputable overnight courier service and shall be deemed given when so delivered by hand, confirmed faxed or if mailed, three days after mailing (one business day in the case of express mail or overnight courier service), as follows (or to such other address or telecopy number as the applicable party shall have notified the other parties in writing in accordance with this Section):

<u>if to Buyer, to</u>:

Deltro Electric Ltd.
1706 Mattawa Ave.
Mississauga Ontario, Canada
L4X 1K1
Attn: David Del Mastro
Email: david@deltro.ca

<u>with a copy to:</u>
Gibson & Barnes LLP
119 Spadina Avenue, Suite 801
Toronto Ontario Canada
M5V 2L1
Attn: Michael Mazzuca
Email: mmazzuca@gibsonandbarnes.ca

<u>if to Seller, to</u>:

Suntech Arizona, Inc.
3801 S. Cotton Lane
Goodyear, AZ 85338
Attn: Michael Nacson

<u>with a copy to:</u>

Richards Layton & Finger
One Rodney Square
PO Box 551
Wilmington, DE 19899
Attn: Paul N. Heath
Email: heath@rlf.com

And

*Committee Counsel*

-5-

>Sheppard Mullin Richter & Hampton, LLP
>30 Rockefeller Plaza
>New York, NY 10112
>Attn: Craig A. Wolfe
>      Malani J. Cademartori
>Email: cwolfe@sheppardmullin.com
>       mcademartori@sheppardmullin.com
>
>Pepper Hamilton LLP
>Hercules Plaza, Suite 5100
>1313 Market Street
>Wilmington, DE 19899-1709
>Attn: David M. Fournier
>Email: fournierd@pepperlaw.com

**13.** **Publicity.** Purchaser shall have the right to issue a press release or make a public announcement relating to the subject matter of this Agreement only after Closing. Both parties shall have the right to make any disclosures as required by law after Closing, including but not limited to those required under the U.S. Securities Exchange Act of 1934, as amended.

**14.** **Fees and Expenses, Brokers and Attorney**. Other than certain professionals engaged by the Debtors and/or the Committee in the Bankruptcy Cases, there are no agents, brokers, finders, investment bankers, persons or firms who or which have acted on behalf, or under the authority, of either party or will be entitled to any fee or commission directly or indirectly from either party in connection with the transactions contemplated by this Agreement. All costs and expenses incurred in connection with this Agreement and the consummation of the transaction contemplated herein shall be paid by the party incurring such expenses, except as otherwise provided herein. If any action is brought for the enforcement, or otherwise in respect of this Agreement, the prevailing party shall be entitled to receive its reasonable attorneys' fees and costs from the non-prevailing party.

**15.** **Transfer and Other Taxes**. All transfer and other taxes incurred as a result of the transactions contemplated hereby shall be paid or reimbursed by the Purchaser. In the event sales, use or other transfer taxes are assessed at Closing or at any time thereafter on the transfer of any other Assets, such taxes incurred as a result of the transactions contemplated hereby shall be paid or reimbursed by Purchaser.

**16.** **Assignment.** The rights and obligations of the parties to this Agreement or any interest in this Agreement shall not be assigned, transferred, hypothecated, pledged or otherwise disposed of ("<u>Assignment</u>") without the prior written consent of the nonassigning party, which consent shall not be unreasonably withheld, with the exception of an Assignment to an affiliate of the assigning party.

**17.** **Amendments; Waivers**. Any provision of this Agreement may be amended or waived prior to the Closing Date if, but only if, such amendment or waiver is in writing and is signed, in the case of an amendment, by each party to this Agreement, or in the case of a waiver,

by the party against whom the waiver is to be effective.  No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

   **18.** **No Third-party Beneficiaries.**  This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

   **19.** **Applicable Law.**  The terms, conditions and other provisions of this Agreement and any documents or instruments delivered in connection with it shall be governed and construed according to the internal laws of the State of Delaware, and both parties consent to the jurisdiction of Federal and state courts located within the State of Delaware.

   **20.** **Bankruptcy Court Jurisdiction**.  Each party agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement exclusively in the Bankruptcy Court, and solely in connection with claims arising under this Agreement (i) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court, (ii) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court, and (iii) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over such party.

   **21.** **Survival**.  The covenants, agreements, representations and warranties of Seller and Purchaser hereto contained in this Agreement or in any certificate or other writing delivered pursuant hereto or in connection herewith shall not survive the Closing except for the covenants and agreements contained herein which contemplate or specifically provide for performance after the Closing Date.

   **22.** **Severability**.  If any provision of this Agreement (or any portion thereof) or the application of any such provision (or any portion thereof) to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof (or the remaining portion thereof) or the application of such provision to any other persons or circumstances.

23. **Headings; Counterparts.** The Section headings appearing in this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or extent of such Section or in any way affect such Section. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24. **Entire Agreement; Amendment.** This Agreement, together with the exhibits attached hereto, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the parties, and there are no representations, warranties or other agreements among the parties in connection with the subject matter hereof except as set forth specifically herein or contemplated hereby.

**IN WITNESS WHEREOF,** authorized representatives of each of the parties to this Agreement have duly executed this Agreement effective as of the date first above written.


Purchaser: DELTRO ELECTRIC LTD.

By: _____
Name: David Del Mastro
Title: President

Seller: SUNTECH ARIZONA, INC.

By: _____
Name:  Michael Nacson
Title:  Director

# Exhibit A

## Assets

| |
|---|
| **Manufacturing - 3S 50-MW Solar Panel Line (New 2010)** |
| #Robust A Robust Model LQL15, 60"W CNC DVA Cutter, S/N 28-6478 (New 2010), CNC Control, with 60" x 72" Layout Table |
| #Robust B Robust Model LQL15, 60"W CNC DVA Cutter, S/N 28-6478 (New 2010), CNC Control, with 60" x 72" Layout Table |
| (2) Somont Model Stringer Rapid 2, Stringers, S/N 10-2098, 10-2097 (New 2010), System Complete with Schmalz 35-kg Capacity Vacuum Lifter, Servo Drives, Conveyors, Pick and Place, Cell Alignment, Cell Check, Soldering, Cameras, Custom Designed & Fabricated Enclosure, PLC Control |
| Somont Model Layup Rapid 4, Tabber, S/N 093099 |
| Custom Designed & Fabricated Inspection Station with (2) 4' 3-Lane Exit Conveyors, (1) 40"W 2 Directional Conveyor, (1) 40"W Roller Ball and Belt Conveyor, (1) 84"W 2-Lane Belt Conveyor, Pneumatic Lift, (1) 84"W Roller Ball Table, with 3-Lane Belt Conveyor, (1) 6' x 6' Roller Ball Table, (1) 6'W x 4-Lane Belt Conveyor |
| 3S Model NG4222XL/CP, 100"W Laminator, S/N N/A (New 2010), PLC Control, with Hyfran Model SUK220-1-S Chiller, S/N 10030417 (New 2010), (2) Oerlikon Leybold Model CP360 15-kg Vacuum, S/N 3100197925, 3100097927 (New 2010), with Assorted Sections of 6'W Roller Ball and Belt Conveyor |
| Custom Designed & Fabricated Framing Station, S/N N/A, with Manual Load and Unload, Siemens Touch PLC Control, Hilger Model Pump 20 Drum Type Glue Dispenser, S/N 2010314304/0 (New 2010), Custom Designed & Fabricated Enclosure |
| Custom Designed & Fabricated Box Application Station, S/N N/A, with Manual Load, Custom Designed & Fabricated Enclosure |
| Custom Designed & Fabricated J Box Soldering Station, S/N N/A, with Conveyor, Pick and Place, Etc. |
| GDL Model JR-2203N, Bench Top Glue Dispenser, S/N 10JRN24166 (New 2010), with Nordson Dispensing Head, (2) Stainless Steel Tables |
| Custom Designed & Fabricated 4'W 3-Lane Paddle Type Exit Conveyor, S/N N/A |
| Custom Designed & Fabricated J Box Potting Station, with Dopag Model Variomix Metering and Mixing Station, S/N 17650 (New 2011), with Custom Designed & Fabricated Gantry Type Dispensing Head |
| Sunling Model 920/2200W, 16-Pass Curing Box, S/N N/A |

Pasan Model CH2000, Flash Tester, S/N PAA0398 (New 2010), with Custom Designed & Fabricated Infeed Conveyor, Custom Designed & Fabricated Panel Tipper, Inspection Conveyor, Etc.

**Maintenance and Storage**

Miscellaneous Machinery and Equipment Throughout Maintenance and Storage, Consisting of: Grizzly Model G1006 Mill Drill, S/N N/A, Dayton Double End Grinder, Jet 7" x 13" Horizontal Metal Cutting Band Saw, S/N N/A, Proto 15-Drawer Tool Box with Tools, Manufacturing Unknown 7-Drawer Tool Box with Tools, Storage Cabinet with Miscellaneous Hand and Power Tools, Miscellaneous Racking, Spare Parts, Tooling, Lista Cabinet with Contents, Nut and Bolt Rack with Contents, Etc.

**Test Lab**

Miscellaneous Equipment Throughout Test Lab, Consisting of: Pason Model CT801 Bench Top Flash Tester, S/N PA0414 (New 2010), with Pason Model BV67 Electronic Load Tester, S/N N/A, Sefele Model SXS56 Electric Safety Tester, S/N N/A, Manufacturer Unknown 2' x 3' Granite Surface Plate, Assorted Precision Measurement Tools, Balances, Power Inverters, Etc.

Perkin Elmer Model DSC8000, Differential Scanning Colorimeter, S/N N/A, with Inter Cooler, Chiller

**Office Furniture and Fixtures**

Miscellaneous Office Furniture & Fixtures Throughout Offices, Consisting of: Conference Table and Chairs, Reception Desks, Scanners, Printers, Shredders, Chairs, Lateral File Cabinets, Cube Partitions, Personal Computers, Server Room and Related Equipment, Laminate Work Stations, Fax Machines, Etc.

Miscellaneous Furniture & Fixtures Throughout Lunchroom, Consisting of: Manitowac Model Indigo Ice Machine, (2) Frigidaire Stainless Steel Dishwashers, (5) Magic Chef Microwaves, (3) Whirlpool Stainless Steel Refrigerator Freezer, (3) 42" Dia. Tables with Chairs, Etc.

**Throughout Facility**

Culligan Water Softener, S/N N/A, with 500-Gallon Tank, Miscellaneous Filters, Etc.

Prime Scales 4' x 4' Above Ground Digital Scale, S/N N/A, with Digital Readout

Ingersoll Rand Model SSREP-75, 75-HP Rotary Screw Air Compressor, S/N CK9244U10225 (New 2010)

Ingersoll Rand Model SSR-UP6-30E-125HA, 30-HP Rotary Screw Air Compressor, S/N CBV155484 (New 2010)

Exhibit A

Asset Purchase Agreement –
Suntech Arizona, Inc.

| |
|---|
| Ingersoll Rand Model NVC600A4HN, Refrigerated Air Dryers, S/N 348841, 526472 (New 2010), with Ingersoll Rand 250-Gallon Vertical Air Receiver |
| Miscellaneous Equipment Throughout Facility, Consisting of: Hand Trucks, Tables, Hand Tools, Support Stands, Light Duty Racking, Supply Cabinets, Parts Bins, Pallet Jacks, Material Carts, Work Stations, Chairs, all associated Electrical Distribution Equipment, including without limitation, Switch Gear and Bus Duct equipment that is dedicated to the Process Distribution Equipment owned by Seller and Excess Raw Materials including Frames, PV Cells, Glass, Back Sheets, Junction Boxes, Glues), any Completed Modules, Etc. |

**Exhibit B**

**Bid Process**

**BID PROCESS**

*In re Suntech America, Inc.* and *Suntech Arizona, Inc.*
**Case No. 15-10054 (Joint Administration)**
**Sale of Certain Assets of Suntech Arizona, Inc.**

The following bid process (the "Bid Process") shall be employed by Suntech Arizona, Inc. ("Seller") in connection with the sale of certain assets of Seller in connection with the bankruptcy cases of Seller and its affiliated debtor Suntech America, Inc. (together with Seller, the "Debtors"), jointly administered under Case No. 15-10054, and pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in order to ensure that the best and/or highest bid for the assets is received by the estate. This Bid Process has been agreed upon by the Debtors and the Official Committee of Unsecured Creditors appointed in the Debtors' bankruptcy cases by the United States Trustee on January 22, 2015 (the "Committee"), and each of the parties submitting an offer for the Assets (as defined below) in accordance with section 3 below has consented to the terms of the Bid Process.

1. **Description of Assets**. The assets to be sold (the "Assets") are those assets of the Seller, as described in **Exhibit A** to the Agreement (defined below).

2. **Participation Requirements**. Parties interested in making an offer to purchase some or all of the Assets (each, a "Potential Purchaser") shall comply with the procedures outlined in this Bid Process.

3. **Submission of Offers**. Any Potential Purchaser shall submit a written offer by no later than **5:00 p.m. Eastern Time on April 3, 2015** (the "Deadline") that satisfies the criteria in subsections 3.1 through 3.6 below:

    3.1 The offer shall be accompanied by a cash deposit of at least 10% of the Purchase Price as set forth in the Agreement (the "Deposit"), which shall be transmitted by wire transfer to and received by the Debtors in accordance with the wire instructions that shall be provided by the Debtors.

    3.2 The offer shall be an all cash offer, and shall not contain any financing, due diligence or other conditions to closing that are not contained in the standard Agreement provided by the Debtors.

    3.3 The offer shall be irrevocable.

    3.4 The offer shall (i) be accompanied by an executed Asset Purchase Agreement in substantially the form attached as Exhibit A (the "Agreement"), (ii) include a redline of the Agreement showing any modifications made to the standard Agreement, and (iii) list the Assets the Potential Purchaser proposes to acquire pursuant to the Agreement on Exhibit A thereto.

   3.5 The offer shall include evidence demonstrating the Potential Purchaser's ability to close timely the transactions contemplated in the Agreement and such evidence shall be to the satisfaction of the Debtors, in consultation with the Committee.

   3.6 The documents (including proof of prior submission of the wire transfer for the Deposit) required herein shall be submitted by email so they are received by the Deadline by the following parties:  (i) the Debtors, Attn: Robert Moon, Email: rmoon@qbpartners.net; (ii) Debtors' counsel, Richards, Layton & Finger, P.A., Attn: Mark D. Collins, Paul N. Heath and Zachary I. Shapiro, Email: collins@rlf.com; heath@rlf.com; shapiro@rlf.com; (iii) the Committee's counsel, Sheppard, Mullin, Richter & Hampton LLP, Attn: Craig Wolfe and Malani Cademartori, Email: cwolfe@sheppardmullin.com; mcademartori@sheppardmullin.com; and (iv) the Committee's financial advisor, FTI Consulting, Inc., Attn: Connor Tully and Christopher LeWand, Email: Conor.Tully@fticonsulting.com; Chris.LeWand@fticonsulting.com.

   4. **Determination of Best Offer**.  As soon as practicable after the Deadline, (i) the Debtors, in consultation with the Committee, shall determine which offer to purchase the Assets is, at that time, the highest and otherwise best offer to purchase the Assets; and (ii) FTI Consulting, Inc. shall notify the Potential Purchasers of such offer and invite such Potential Purchasers to submit a higher or otherwise better offer to purchase the Assets.  On or before April 7, 2015, the Debtors, in consultation with the Committee, shall determine which offer to acquire the Assets is the highest and otherwise best offer to purchase the Assets (the "Best Offer").

   5. **Sale Motion and Hearing Thereon**.  The Debtors, in consultation with the Committee, shall file a motion pursuant to section 363 of title 11 of the United States Code to sell the Assets free and clear of all liens, claims, encumbrances and other interests (a "Motion") to the Potential Purchaser making the Best Offer, on an expedited basis (if necessary) such that the hearing to approve the Motion will be held by the Bankruptcy Court no later than April 28**,** 2015, or such other date as soon thereafter as can be established by the Bankruptcy Court.

   6. **Good Faith Deposit**.  In the event that the Potential Purchaser submitting the Best Offer fails to close the sale of the Assets contemplated by the Agreement due to its breach of the Agreement, such Potential Purchaser shall forfeit its Deposit with such funds becoming property of the Seller without any right of refund to such Potential Purchaser (or any other party).  Except as provided in the previous sentence, the Deposits of all Potential Purchasers shall be held in escrow by the Debtors and shall not become property of the Debtors' estates.  The Deposits of any Potential Purchasers that do not submit the Best Offer shall be returned three business days after the selection of the Best Offer.  The Deposit of the Potential Purchaser submitting the Best Offer shall be applied to the purchase price for the Assets as provided for in the Agreement.

   7. **Reservation of Rights**.  The Debtors, in consultation with the Committee, reserve the right to amend the Bid Process as they may determine reasonably appropriate to maximize the value realized by the estates.

**Exhibit C**

**BILL OF SALE**

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, on the terms and subject to the conditions set forth in the Asset Purchase Agreement dated as of April 3, 2015 (the "Agreement") by and between Suntech Arizona, Inc., a Delaware corporation ("Seller"), and Deltro Electric Ltd., a Corporation duly organized, validly existing and in good standing under the laws of the Province of Ontario, Canada ("Purchaser"), Seller hereby sells, conveys, transfers, assigns and delivers to Purchaser all of Seller's right, title and interest in and to the Assets (as defined in the Agreement) "as is" and with no representations or warranties, free and clear of all liens or other encumbrances of any nature.

Nothing contained herein is intended to or shall be construed to modify, alter, amend, expand, interpret, supersede or otherwise change any of the terms, conditions or covenants or any other provisions of the Agreement.

The terms, conditions and other provisions of this Bill of Sale and any documents or instruments delivered in connection with it shall be governed and construed according to the internal laws of the State of Delaware, and both parties consent to the jurisdiction of Federal and state courts located within the State of Delaware.

**IN WITNESS WHEREOF,** Seller has caused its duly authorized representatives to execute this Bill of Sale as of May __, 2015.

Seller:

Suntech Arizona, Inc.

By: _____
Name:
Title:

Exhibit C