THIS COMBINED PLAN AND DISCLOSURE STATEMENT HAS NOT BEEN APPROVED
FOR SOLICITATION PURPOSES OR OTHERWISE.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re:                                    :    Chapter 11
                                          :
SUNTECH AMERICA, INC., et al.,            :    Case No. 15-10054 (CSS)
                                          :
          Debtors.¹                       :    Jointly Administered
------------------------------------------------------------ x
```

## DEBTORS' COMBINED DISCLOSURE
## STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Rachel L. Biblo (No. 6012)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801

*Counsel to the Debtors and Debtors in Possession*

Dated: January 12, 2016
       Wilmington, Delaware

---

¹       The Debtors in these Chapter 11 Cases, along with the last four digits of the Debtors' federal tax identification numbers, are Suntech America, Inc. (9235) and Suntech Arizona, Inc. (0353).  The Debtors' mailing address is 2721 Shattuck Avenue #304, Berkeley, CA 94107.

TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................1

II. DEFINITIONS AND CONSTRUCTION OF TERMS ...............................................................2

    A.  Definitions .............................................................................................................2

    B.  Interpretation; Application of Definitions and Rules of Construction........................17

III. BACKGROUND AND DISCLOSURES................................................................................18

    A.  General Background ...............................................................................................18

        1.  The Suntech Group .......................................................................................18

        2.  Suntech America ...........................................................................................19

        3.  Suntech Arizona ...........................................................................................19

    B.  Events Precipitating the Chapter 11 Filing ..............................................................19

        1.  The Wuxi Sale and the Resulting International Restructuring Efforts .................19

        2.  The Debtors' Role in the International Restructuring Efforts .............................20

        3.  The Litigation Drain .....................................................................................21

    C.  The Chapter 11 Cases ............................................................................................25

        1.  First Day Orders...........................................................................................25

        2.  Appointment of the Committee ......................................................................26

        3.  Employment of Professionals and Advisors.....................................................26

        4.  Sale of Suntech Arizona's Assets and the Inventory Sales.................................27

        5.  Rejection of Executory Contracts and Unexpired Leases...................................28

        6.  Claims Process and Bar Date .........................................................................28

    D.  Certain Federal Income Tax Consequences...............................................................29

    E.  Alternate Plan.......................................................................................................29

    F.  The Plan Settlement ..............................................................................................30

    G.  Best Interests Test and Liquidation Analysis............................................................33

    H.  Releases by the Debtors and Third Parties ...............................................................35

    I.  Certain Risk Factors to be Considered......................................................................35

        1.  Risk Factors that May Affect the Debtors' Ability to Consummate the Combined Plan and Disclosure Statement.............................................................36

            a.  Debtors May Not Be Able to Secure Confirmation of the Combined Plan and Disclosure Statement ...............................................................36

            b.  Risk of Non-Occurrence of the Effective Date................................................36

i

       c.  Parties May Object to the Classification of Claims and Equity Interests ........37

    2.  Risk Factors that may Affect Distributions under the Combined Plan and Disclosure Statement ...................................................................................37

IV. TREATMENT OF UNCLASSIFIED CLAIMS ..................................................38

   A.  Administrative Expense Claims.....................................................................38

   B.  Priority Tax Claims........................................................................................39

   C.  Payment of Statutory Fees ............................................................................39

V. SUMMARY OF DEBTORS' ASSETS; SUMMARY OF TREATMENT OF CLAIMS AND EQUITY INTERESTS AND ESTIMATED RECOVERIES....................................40

   A.  Summary of Assets .......................................................................................40

   B.  Summary of Treatment of Claims and Equity Interests and Estimated Recoveries....40

VI. CONFIRMATION AND VOTING PROCEDURES..............................................41

   A.  Confirmation Procedure.................................................................................41

   B.  Bar Dates for Fee Claims..............................................................................47

VII.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; ESTIMATED RECOVERIES ..................................................................................................48

VIII. TREATMENT OF CLAIMS AND EQUITY INTERESTS....................................49

   A.  Treatment of Claims .....................................................................................49

   B.  Modification of Treatment of Claims and Equity Interests ...........................54

   C.  Cramdown and No Unfair Discrimination.....................................................54

IX. PROVISIONS REGARDING THE PLAN ADMINISTRATOR ...........................55

   A.  Appointment of the Plan Administrator.........................................................55

   B.  Rights and Powers of the Plan Administrator................................................55

   C.  Post Confirmation Date Expenses of the Plan Administrator.........................56

X. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT ...............................................................................57

   A.  Method of Payment.......................................................................................57

   B.  Objections to and Resolution of Claims .......................................................57

   C.  Claims Objection Deadline ...........................................................................57

   D.  No Distribution Pending Allowance ..............................................................57

   E.  Claims Reserve .............................................................................................58

   F.  Distribution After Allowance .......................................................................58

   G.  Adjustments to Claims Without Objection....................................................58

   H.  Late Claims and Amendments to Claims......................................................58

RLF1 13239330v.6

I.   Distribution Record Date ..................................................................................................59

J.   Delivery of Distributions ..............................................................................................59

K.  Unclaimed Distributions ..............................................................................................60

L.   *De Minimis* Distributions ..............................................................................................60

M. Setoff..............................................................................................................................61

N.  Postpetition Interest ......................................................................................................61

O.  Allocation of Distributions Between Principal and Interest ........................................61

XI. IMPLEMENTATION AND EFFECT OF CONFIRMATION OF COMBINED PLAN AND DISCLOSURE STATEMENT ...................................................................................................61

    A.  Means for Implementation of the Combined Plan and Disclosure Statement ............61

XII. EXCULPATION, RELEASES AND INJUNCTIONS................................................................64

    A.  Exculpation ....................................................................................................................64

    B.  Releases By the Debtors ................................................................................................64

    C.  Third Party Releases .....................................................................................................65

    D.  Injunctions Relating to Releases ..................................................................................66

    E.  Injunctions to Protect Estate Assets .............................................................................67

XIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.............................................68

    A.  Rejection of Executory Contracts and Unexpired Leases.............................................68

    B.  Deadline for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Combined Plan and Disclosure Statement ...............68

    C.  Debtors' Obligations Pursuant to their Corporate Charters, Bylaws or other Organizational Documents............................................................................................68

    D.  Debtors' Insurance Policies ..........................................................................................69

XIV. CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND THE EFFECTIVE DATE .........................................................................................................69

    A.  Conditions Precedent to Confirmation.........................................................................69

    B.  Conditions Precedent to the Effective Date .................................................................70

    C.  Establishing the Effective Date.....................................................................................70

    D.  Effect of Failure of Conditions ....................................................................................71

    E.  Waiver of Conditions to Confirmation and Effective Date ..........................................71

XV. RETENTION OF JURISDICTION ...........................................................................................72

XVI. MISCELLANEOUS PROVISIONS ........................................................................................74

    A.  Avoidance Actions.........................................................................................................74

    B.  Books and Records .......................................................................................................75

iii

C.  Revesting of Debtors' Assets ........................................................................75

D.  Termination of Injunctions or Stays ...........................................................75

E.  Amendment or Modification of the Combined Plan and Disclosure Statement ..........76

F.  Severability ..................................................................................................77

G.  Revocation or Withdrawal of the Combined Plan and Disclosure Statement .............77

H.  Binding Effect ..............................................................................................77

I.  Notices .........................................................................................................77

J.  Governing Law .............................................................................................78

K.  Withholding and Reporting Requirements ..................................................78

L.  Headings .......................................................................................................79

M. Exhibits/Schedules .......................................................................................79

N.  Filing of Additional Documents ..................................................................79

O.  No Admissions ..............................................................................................79

P.  Successors and Assigns .................................................................................80

Q.  Reservation of Rights ...................................................................................80

R.  Implementation .............................................................................................80

S.  Inconsistency ................................................................................................80

T.  Dissolution of the Debtors ...........................................................................81

U.  Dissolution of the Committee ......................................................................81

V.  Termination of the Plan Administrator ........................................................81

W. Compromise of Controversies .....................................................................81

X.  Request for Expedited Determination of Taxes ..........................................82

iv

## NOTICE

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT. THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, EACH HOLDER OF A CLAIM OR EQUITY INTEREST THAT IS ENTITLED TO VOTE SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN.

**THE COMMITTEE HAS INDEPENDENTLY CONCLUDED THAT THE COMBINED PLAN AND DISCLOSURE STATEMENT REPRESENTS THE BEST POSSIBLE OUTCOME FOR CREDITORS AND URGES CREDITORS TO VOTE IN FAVOR OF THE COMBINED PLAN AND DISCLOSURE STATEMENT. A LETTER FROM THE COMMITTEE EXPRESSING ITS SUPPORT OF THE COMBINED PLAN**

**AND DISCLOSURE STATEMENT IS INCLUDED IN THE SOLICITATION PACKAGE YOU RECEIVED.**

RLF1 13239330v.6

# I.  INTRODUCTION

Suntech America, Inc. and Suntech Arizona, Inc. (collectively, the "**Debtors**") hereby propose the Debtors' Combined Plan and Disclosure Statement pursuant to sections 1125 and 1129 of the Bankruptcy Code.  While the Debtors are the proponents of the Combined Plan and Disclosure Statement within the meaning of section 1129 of the Bankruptcy Code, the Combined Plan and Disclosure Statement is the culmination of extensive negotiations between the Debtors, the Committee, The Solyndra Residual Trust and Wuxi Suntech Power Co., Ltd./Suntech Power Asia Pacific, Ltd.

The Combined Plan and Disclosure Statement constitutes a liquidating chapter 11 plan for the Debtors and provides for the Distribution of the Debtors' assets already liquidated or to be liquidated over time to the Holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the priority of claims provisions of the Bankruptcy Code.  Except as otherwise provided by Order of the Bankruptcy Court, Distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section XVI.E. of the Combined Plan and Disclosure Statement, the Debtors expressly reserve the right to alter, amend or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof, including as disclosed more fully in Section XVI.E. of this Combined Plan and Disclosure Statement; provided, however, that, pursuant to the Plan Settlement, the Debtors have agreed not to amend or modify the Combined Plan and Disclosure Statement without the prior written consent of the Committee, Solyndra and Wuxi to the extent such amendment or modification constitutes a

material alteration of the terms hereof, provided the Plan Settlement remains in place and is adhered to by the Committee, Solyndra and Wuxi.

## II. DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Definitions

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1. "**Additional Assets**" means any net recoveries or other net value realized by the Debtors or the Post-Effective Date Debtors on account of any assets not disclosed in the Debtors' Schedules, including without limitation, the equivalent cash value attributable to any such non-disclosed assets.

2. "**Administrative Expense Bar Date**" means the Business Day that is thirty (30) days after the Effective Date.

3. "**Administrative Expense Claim**" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates, (b) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, (c) any fees or charges assessed against the Estates under section 1930 of Title 28 of the United States Code, and (d) all Claims arising under section 503(b)(9) of the Bankruptcy Code.

4. "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5. "**Affiliate Claim**" means a Claim against a Debtor held by an Affiliate of a Debtor.

6. "**Allowed**" means, with respect to Claims: (a) any Claim, proof of which was timely Filed (or for which Claim, under the Combined Plan and Disclosure Statement, the

2

Bankruptcy Code, or a Final Order of the Bankruptcy Court, a proof of claim is not or shall not be required to be Filed); (b) any Claim which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no proof of claim has been Filed; or (c) any Claim allowed pursuant to the Combined Plan and Disclosure Statement or a Final Order of the Bankruptcy Court; provided that with respect to any Claim described in clauses (a) and (b) shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or such objection is interposed and the Claim is subsequently Allowed by a Final Order; provided, further, that Claims allowed solely for purposes of voting on the Combined Plan and Disclosure Statement pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

7.     **"APA"** means that certain asset purchase agreement between Suntech Arizona and the Purchaser.

8.     **"Avoidance Actions"** means any and all rights to recover or avoid transfers or liens under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

RLF1 13239330v.6

9.     **"Ballot"** means the ballot on which each Holder of a Claim or Equity Interest entitled to vote on the acceptance or rejection of this Combined Plan and Disclosure Statement casts such vote.

10.     **"Balloting Agent"** means UpShot Services LLC, in its capacity as the Bankruptcy Court-approved solicitation, claims and noticing agent.

11.     **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time.

12.     **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware.

13.     **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

14.     **"Bar Date Order"** means the *Order Establishing Bar Dates for Filing Claims and Approving Form and Manner of Notice Thereof* entered by the Bankruptcy Court on February 5, 2015 [Docket No. 86].

15.     **"Bar Dates"** means those dates and times defined as the Bar Dates in Section III.D.7.c. of this Combined Plan and Disclosure Statement.

16.     **"Books and Records"** means the books and records defined as the Books and Records in Section XVI.B. of the Combined Plan and Disclosure Statement

17.     **"Business Day"** means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

18.     **"Cash"** means legal tender of the United States of America and equivalents thereof.

19.    **"Causes of Action"** means the Avoidance Actions and all other claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any Debtor and/or any of the Estates against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, and any and all commercial tort claims against any party, including the Debtors' current and former directors and officers; and subject, however, to any releases provided in the Combined Plan and Disclosure Statement, the Confirmation Order or any other Final Order of the Bankruptcy Court.

20.    **"Chapter 11 Cases"** means the procedurally consolidated cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, styled as Suntech America, Inc., *et al.*, under Case No. 15-10054 (CSS), currently pending in the Bankruptcy Court.

21.    **"Claim"** has the meaning set forth in section 101(5) of the Bankruptcy Code.

22.    **"Claims Objection Deadline"** means the first Business Day that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by Order of the Bankruptcy Court upon motion of the Post-Effective Date Debtors.

23.    **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

24.    **"Clerk"** means the clerk of the Bankruptcy Court.

25.    **"Combined Plan and Disclosure Statement"** means this combined disclosure statement and chapter 11 plan of liquidation including, without limitation, all exhibits,

supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time through the Confirmation Date.

26.     "**Committee**" means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee on January 22, 2015 [Docket No. 46].

27.     **Committee Fee Account**" means an escrow account funded by the Debtors in the amount of the Committee Fee Cap, which shall be the sole source for paying the Allowed fees and expenses of the Committee Professionals charged and incurred from October 1, 2015 through the Effective Date.

28.     "**Committee Fee Cap**" means an amount not to exceed $750,000.00.

29.     "**Committee Professionals**" means any professional person employed in the Chapter 11 Cases by the Committee pursuant to section 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

30.     "**Committee Support Letter**" means that certain letter from the Committee expressing its support for the Combined Plan and Disclosure Statement and urging Creditors to vote in favor of the Combined Plan and Disclosure Statement.  A copy of the Committee Support Letter is attached to this Combined Plan and Disclosure Statement as Exhibit B.

31.     "**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket.

32.     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

33.     "**Confirmation Notice**" means that notice defined as the Confirmation Notice in Section VI.A.7. of the Combined Plan and Disclosure Statement.

34.    **"Confirmation Objection Deadline"** means the date established by the Bankruptcy Court for the filing of any objections or responses to confirmation of the Combined Plan and Disclosure Statement

35.    **"Confirmation Order"** means the Order of the Bankruptcy Court confirming the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.

36.    **"Creditor"** means any Person that is the Holder of a Claim against any of the Debtors.

37.    "**Debtors**" means, collectively, Suntech America, Inc. and Suntech Arizona, Inc.

38.    **"Debtors-in-Possession"** means the Debtors in their capacity as debtors-in-possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

39.    **"Disclosure Statement Order"** means the Order [Docket No __] entered by the Bankruptcy Court on January ___, 2016 that approved the Combined Plan and Disclosure Statement as containing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and authorized the Debtors to solicit acceptances of the Combined Plan and Disclosure Statement.

40.    **"Disputed"** means any Claim that is listed on the Schedules as disputed, contingent or unliquidated, or which is objected to in whole or in part prior to the Claim Objection Deadline and that has not been resolved by settlement or Final Order.

41.    **"Distribution"** means any distribution to the Holders of Allowed Claims.

42.    **"Distribution Record Date"** means the date on which the Disclosure Statement Order is entered.

43.    **"Docket"** means the docket in the Chapter 11 Cases maintained by the Clerk.

7

44.     **"ECD"** means Energy Conversion Devices Liquidation Trust.

45.     **"ECD Claim"** means proof of claim no. 16 filed by ECD against Suntech America in an amount not less than $950 million (plus treble damages) on account of its Claims against Suntech America in the ECD Litigation.

46.     **"ECD Litigation"** means that certain lawsuit commenced on October 4, 2013 by ECD, through its liquidating trustee, John Madden, against, among others, Suntech America in the United States District Court for the Eastern District of Michigan.

47.     **"Effective Date"** means the date on which the conditions specified in Section XIV.A. of the Combined Plan and Disclosure Statement have been satisfied or waived.

48.     **"Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

49.     **"Equity Interests"** means all equity interests in the Debtors including, but not limited to, all issued, unissued, authorized or outstanding shares together with any warrants, options or contract rights to purchase or acquire such interests at any time.

50.     **"Estates"** means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

51.     **"Executory Contract"** means any executory contract or unexpired lease as of the Petition Date between the Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Combined Plan and Disclosure Statement.

52.     **"Fee Claim"** means a Claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Cases.

53.     **"File," "Filed" or "Filing"** means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases.

54.     "**Final Fee Application**" means an application for final allowance of the Professional's aggregate Fee Claim.

55.     "**Final Order**" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

56.     "**First Day Declaration**" means the Declaration of Robert Moon in Support of Chapter 11 Petitions and First Day Motions [Docket No. 8].

57.     "**First Day Motions**" means those motions and applications defined as the First Day Motions in Section III.D.1. of the Combined Plan and Disclosure Statement.

58.     "**General Bar Date** means April 13, 2015 at 5:00 p.m. (ET), as stated in the Notice of Deadlines for Filing Proofs of Claim Against Debtors [Docket No. 129], filed March 6, 2015.

59.     "**General Unsecured Claim**" means any Claim against the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not:  (i) an Administrative Expense Claim, (ii) a Priority Tax Claim, (iii) a Secured Claim, (iv) a Priority Non-Tax Claim, (v) a Products Liability Claim, (vi) an Affiliate Claim or (vi) an Intercompany Claim.

9

60.     "**Governmental Bar Date**" means July 13, 2015 at 5:00 p.m. (ET), which is the deadline for Governmental Units to file proofs of claim on account of pre-petition Claims against any of the Debtors.

61.     "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

62.     "**Holder**" means the beneficial holder of any Claim or Equity Interest.

63.     "**Holdings Loan**" means that certain loan obligation in the approximate amount of $7 million arising under the loan agreement, dated on or about January 24, 2014, between Suntech America, as lender, and Suntech Holdings, as borrower.

64.     "**Impaired**" means "impaired" as the term is used in sections 1123(a)(4) and 1124 of the Bankruptcy Code.

65.     "**Insurance Policies**" means all insurance policies of the Debtors.

66.     "**Insurers**" means those entities defined as the "Insurers" in Section III.C.3.c. of the Combined Plan and Disclosure Statement.

67.     "**Intercompany Claims**" means (i) any account reflecting intercompany book entries by one Debtor with respect to the other Debtor, or (ii) any Claim that is not reflected in such book entries and is held by a Debtor against the other Debtor, in each case accruing before or after the Petition Date through the Effective Date, including, but not limited to, any Claim for reimbursement, payment as guarantor or surety, or any Claim for contribution or expenses that were allocable between the Debtors.

68.     "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as

RLF1 13239330v.6

defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

69. "**Manufacturing Assets**" means the assets that Suntech Arizona used to manufacture PV modules.

70. "**Mesquite Receivable**" means the $3.0 million holdback amount payable to the Debtors by Mesquite pursuant to Amendment No. 4, dated June 21, 2013, to the Engineering, Procurement and Construction Agreement, dated as of January 31, 2011, by and between, on the one hand, Mesquite and, on the other hand, Suntech America and Zachry Industrial, Inc.

71. "**Mesquite**" means Mesquite Solar I, LLC.

72. "**Motion to Amend**" has the meaning given to the term in Article III.B.3.a of the Combined Plan and Disclosure Statement.

73. "**Motion to Reconsider**" has the meaning given to the term in Article III.B.3.a of the Combined Plan and Disclosure Statement.

74. "**Old Wuxi**" means Wuxi prior to the consummation of the Wuxi Sale.

75. "**Order**" means an order or judgment of the Bankruptcy Court as entered on the Docket.

76. "**Ordinary Course Professionals Order**" means the Order Authorizing the Debtors to Employ and Compensate Professionals Utilized in the Ordinary Course of Business, Effective Nunc Pro Tunc to the Petition Date [Docket No. 83] entered by the Bankruptcy Court on February 5, 2015.

77. "**Person**" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof or any other Entity.

11

78.    "**Petition Date**" means January 12, 2015.

79.    "**Plan Administrator**" means the person appointed pursuant to Article IX of the Combined Plan and Disclosure Statement to be the sole officer and director of the Post-Effective Date Debtors and to carry out the duties and responsibilities set forth herein on behalf of the Estates and the Post-Effective Date Debtors.

80.    "**Plan Documents**" means the Combined Plan and Disclosure Statement, the Plan Supplement and all of the exhibits and schedules attached to any of the foregoing.

81.    "**Plan Settlement**" means that certain agreement establishing the principal terms of the Combined Plan and Disclosure Statement, dated as of October 30, 2015, by and between the Debtors, the Committee, Solyndra and Wuxi.

82.    "**Plan Supplement**" means the appendix of schedules and exhibits to be Filed with the Bankruptcy Court at least fourteen (14) calendar days prior to the Voting Deadline, as may be modified and/or supplemented.  The Plan Supplement shall include the material terms of the Plan Administrator's compensation and may include such other documents as the Debtors deem appropriate.

83.    "**Post-Effective Date Debtors**" means the Debtors from and after the Effective Date.

84.    "**PRC Court**" means Wuxi Municipal Intermediate People's Court.

85.    "**PRC Insolvency Proceeding**" means that certain proceeding whereby a group of Chinese banks petitioned the PRC Court for the reorganization of Wuxi.

86.    "**PRC**" means the People' Republic of China.

12

87.     "**Priority Non-Tax Claim**" means a Claim that is accorded priority in right of payment under section 507 of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

88.     "**Priority Tax Claim**" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

89.     "**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

90.     "**Products Liability Claim**" means any claim or Claim arising out of and/or related to, in any manner or fashion, any product or products manufactured, designed, supplied, produced, marketed sold and/or distributed by or on behalf of any Debtor, including in which litigation is pending against the Debtors, including the Products Liability Lawsuits, or for which the Debtors' liability on account of such claim or Claim has been established by Final Order.

91.     "**Products Liability Lawsuits**" means the three separate lawsuits pending in California state courts, specifically (i) *William Kuffner,* et al. *v. Suntech America, Inc.,* et al., Contra Costa County Superior Court, Case No. C13-01328, (ii) *Cameron Park Senior Living, LLC,* et. al. *v. Petersen-Dean, Inc.,* et al., El Dorado County Superior Court, Case No. PL20130177, and (iii) *Brian Everett,* et al. *v. Pulte Group, Inc.,* et al., Placer County Superior Court, Case No. SCV0033498, where the plaintiffs allege products liability and related claims in connection with roof-tile solar panels manufactured by a third party and allegedly sold by Suntech America.

92.     "**Professional**" means any professional person employed in the Chapter 11 Cases pursuant to section 327, 363 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

RLF1 13239330v.6

93.     "**Purchaser**" means Deltro Electric Ltd.

94.     "**PV**" means photovoltaic.

95.     "**Reaffirmation Agreement**" means that certain reaffirmation acknowledgement to be executed by Wuxi in favor of Mesquite upon Mesquite's agreement in writing (or by stipulation approved by the Bankruptcy Court) to pay the Mesquite Receivable to the Debtors in immediately available funds, which funds shall be held in escrow until the Effective Date, and in exchange for Wuxi's execution and release of such executed agreement. The executed Reaffirmation Agreement shall also be held in escrow until the Effective Date, unless otherwise agreed to in writing by the Settlement Parties.  The Reaffirmation Agreement shall be in a form agreed upon by the parties thereto and shall be in a form substantially similar to the version attached hereto as Exhibit D.

96.     "**Rejection Bar Date**" means the deadline to file a proof of claim for damages relating to the rejection of an Executory Contract, which, pursuant to the Bar Date Order, is the later of (a) the General Bar Date or (b) twenty-one (21) days after service of any Order authorizing the rejection of such contract or lease.

97.     "**Related Persons**" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former shareholders, affiliates (whether by operation of law or otherwise), subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals (including, without limitation, the Professionals), representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, and any Person claiming by or through them.

RLF1 13239330v.6

98.    **"Released Parties"** means the following Entities:    (a) the Committee; (b) Solyndra; (c) Wuxi; (d) the Related Persons of the foregoing; and (e) the Debtors' Related Persons.

99.    **"Releasing Parties"** means the following Entities:    (a) the Debtors; (b) the Committee; (c) Solyndra; and (d) Wuxi.

100.    **"Schedules"** means the schedules of assets and liabilities and the statement of financial affairs filed by each Debtor on February 26, 2015 (Docket No. 117 through 120) and any and all amendments and modifications thereto.

101.    **"Secured Claim"** means a Claim (i) that is secured by a Lien on property in which the Estates have an interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to the Debtors; (ii) to the extent of the value of the Holder's interest in the Estates' interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (A) is undisputed by the Debtors or (B) if disputed by the Debtors, such dispute is settled by written agreement between the Debtors or the Plan Administrator and the Holder of such Claim or determined, resolved, or adjudicated by Final Order.

102.    **"Settlement Parties"** means the Debtors, the Committee, Solyndra and Wuxi.

103.    **"Shunfeng"** means Jiangsu Shunfeng Photovoltaic Technology Co., Ltd.

104.    **"Solyndra"** means The Solyndra Residual Trust.

105.    **"Solyndra Litigation"** means that certain lawsuit commenced on October 11, 2012 by Solyndra, through its liquidating trustee, R. Todd Neilson, against, among others, Suntech America in the United States District Court for the Northern District of California.

15

**106.** "**Statutory Fees**" means any and all fees payable to the UST pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

**107.** "**Stay Relief Stipulation**" means that certain stipulation entered into on or around April 16, 2015 by the Debtors and the plaintiffs in the Products Liability Lawsuits.

**108.** "**Suntech America**" means Suntech America, Inc.

**109.** "**Suntech Arizona**" means Suntech Arizona, Inc.

**110.** "**Suntech ES**" means Suntech ES Holdings, Inc.

**111.** "**Suntech Group**" means those certain affiliated entities, including the Debtors, to which Suntech Power Holdings Co., Ltd. is the ultimate parent, as set forth in the structure chart attached hereto as Exhibit A.

**112.** "**Suntech Holdings**" means Suntech Power Holdings Co., Ltd., the ultimate parent of the Suntech Group.

**113.** "**Unclaimed Distribution Deadline**" means ninety (90) days from the date the Plan Administrator and/or the Post-Effective Date Debtors make a Distribution of Cash or other property under the Combined Plan and Disclosure Statement to a Holder of an Allowed Claim.

**114.** "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

**115.** "**Unimpaired**" means not Impaired.

**116.** "**UpShot**" means UpShot Services LLC.

**117.** "**UST**" means the Office of the United States Trustee for the District of Delaware.

**118.** "**Vasari APA**" means that certain asset purchase agreement providing for Suntech Arizona to sell the Manufacturing Assets to Vasari.

**119.** "**Vasari**" means Vasari Energy North America Inc.

120.    **"Voting Deadline"** means that date and time defined as the voting deadline in Section VI.A.8. of the Combined Plan and Disclosure Statement.

121.    **"Wuxi Minimum Distribution"** means $4,250,000.00.

122.    **"Wuxi Sale"** means the sale of all of Wuxi's assets to Shunfeng pursuant to the approved restructuring plan in the PRC Insolvency Proceeding and through which Wuxi became a wholly-owned subsidiary of Shunfeng.

123.    **"Wuxi"** means Wuxi Suntech Power Co., Ltd. and/or Suntech Power Asia Pacific, Ltd.

**B.      Interpretation; Application of Definitions and Rules of Construction**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, Article of, Schedule to, or Exhibit to the Combined Plan and Disclosure Statement.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in the Combined Plan and Disclosure Statement.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Combined Plan and Disclosure Statement.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Plan and Disclosure Statement.

RLF1 13239330v.6

## III.  BACKGROUND AND DISCLOSURES

On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code initiating these Chapter 11 Cases.  After the Petition Date, the Debtors have remained in possession of their assets and management of their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### A.  General Background

Below is a summary of the Debtors' business (including the Suntech Group's business), organizational structure, and the Suntech Group's international restructuring efforts, and the events leading to the Debtors' Chapter 11 filings.[2]  In addition, below is a summary of certain of the key events in the Chapter 11 Cases.

#### 1.  The Suntech Group

Suntech Holdings, a Cayman Island exempted company, is the ultimate parent of the Suntech Group.  Suntech Holdings is a publicly held company that was delisted from the New York Stock Exchange in February 2014 and, subsequently, was placed on the over-the-counter-exchange.

Historically, the operating subsidiaries in the Suntech Group developed, manufactured and marketed PV modules and cells and provided PV system integration services to customers around the world.  Prior to the Wuxi Sale (as described below), the Suntech Group's primary manufacturing capacity was located in the PRC.  The Suntech Group sold solar products for residential, commercial, industrial and utility applications throughout the Americas,

---

[2] Further information regarding such matters can be found in the First Day Declaration, which is incorporated by reference herein.  Copies of the First Day Declaration and all other filings in the Chapter 11 Cases can be obtained and viewed free of charge at the following web address: http://www.upshotservices.com/SuntechUS.

Europe, Asia and the Middle East.  In the course of its operations, the Suntech Group delivered more than 25 million PV panels to thousands of customers in more than 80 countries.

       **2.**       **Suntech America**

Suntech America is wholly owned by Suntech ES.[3]  Historically, Suntech America was the main operating subsidiary of the Suntech Group in the Americas, with a primary business purpose of acting as an intermediary for marketing, selling and distributing the Suntech Group's manufactured products.

       **3.**       **Suntech Arizona**

Suntech Arizona is also wholly owned by Suntech ES.  Prior to ceasing production in April 2013, Suntech Arizona manufactured PV modules and sold those PV modules to Suntech America.

**B.**       **Events Precipitating the Chapter 11 Filing**

These Chapter 11 Cases are the consequence, in large part, of the following: (i) the Suntech Group's international restructuring efforts which, on a macroeconomic level, resulted from dramatic changes in the solar panel industry and, on a microeconomic level, the Wuxi Sale; (ii) as related to the Debtors specifically, fundamental changes in the regulation of the importation of foreign solar panels in the United States; and (iii) various litigation matters that have consumed the Debtors' resources.

       **1.**       **The Wuxi Sale and the Resulting International Restructuring Efforts**

As mentioned above, the Suntech Group's primary manufacturing capacity was located at Wuxi in Wuxi, PRC.  At one time, the Suntech Group had over 10,000 employees at Wuxi.  However, a rapid decrease in the price of solar panels due to an expansion of Chinese solar panel manufacturing capacity and uncertainty concerning the tariffs to be imposed by the

---

[3] Suntech ES is a holding company that was formed to hold equity investments in United States entities.

United States Department of Commerce led to severe financial difficulties for the Suntech Group. As a result, on March 18, 2013, a group of Chinese banks, allegedly owed $1.3 billion, petitioned the PRC Court in Jiangsu Province, PRC for the reorganization of Wuxi. The PRC Court issued an order placing Wuxi into the PRC Insolvency Proceeding on March 21, 2013, and, on November 15, 2013, the PRC Court approved a restructuring plan that provided for the sale of all of Wuxi's assets to Shunfeng. On April 7, 2014, the stockholders of Shunfeng approved the Wuxi Sale, and Wuxi became a wholly owned subsidiary of Shunfeng.

As a result of the Wuxi Sale, the Suntech Group no longer owned or controlled Wuxi's manufacturing operations in the PRC and the Suntech Group had a dramatically reduced footprint in Asia generally and the PRC specifically. Consequently, the Suntech Group undertook a restructuring around its current activities and assets, with the intention of operating primarily as a seller and distributor of solar products using its existing international sales and distribution platforms.

2.      **The Debtors' Role in the International Restructuring Efforts**

Throughout the restructuring process that resulted from the PRC Insolvency Proceeding, the Suntech Group intended to continue to sell and distribute solar panels in the Americas through Suntech America. Thus, the Suntech Group believed that the success of the Debtors was critical to the success of the Suntech Group. However, Suntech America had no readily available and consistent source of solar panels to sell and distribute due to the imposition of extraordinarily high tariffs by the United States Department of Commerce on solar panels originating from China. The tariffs caused the continued importation, sale and distribution of solar panels in the Americas to become economically infeasible for the Suntech Group.

3.    **The Litigation Drain**

The Debtors are named parties to several lawsuits in forums across the United States.  A general description of the significant lawsuits follows.

a.    **The Solyndra Antitrust Litigation**

Suntech America is a party to two separate antitrust lawsuits.  Solyndra, by and through its liquidating trustee, R. Todd Neilson, commenced one of the antitrust lawsuits, and ECD, by and through its liquidating trustee, John Madden, commenced the other such lawsuit.  The aggregate value of the damages sought against all of the defendants in such suits is approximately $2.5 billion.

On October 11, 2012, Solyndra, a former solar panel manufacturer located in California, filed a complaint (which was subsequently amended on February 12, 2013) against, among others, Suntech Holdings and Suntech America in the United States District Court for the Northern District of California, alleging violations of the Sherman Act, California Cartwright Act, California's unfair competition laws, as well as claims for tortious interference.  Solyndra claimed, among other allegations, that Suntech Holdings, Suntech America, and the other defendants acted in concert to fix prices below cost in order to dominate the United States solar panel market for the purpose of driving Solyndra and other United States manufacturers out of business.

On March 8, 2013, the defendants in the Solyndra Litigation filed a joint motion to dismiss the complaint.  On March 31, 2014, the District Court issued an opinion and order denying the motion to dismiss.  On April 6, 2015, Solyndra filed proof of claim no. 16 against Suntech America in an amount not less than $1.6 billion (plus treble damages) on account of its claims against Suntech America in the Solyndra Litigation.  The Solyndra Litigation is ongoing.

However, upon the Effective Date, such litigation will be resolved vis-à-vis Suntech America in accordance with the terms of the Plan Settlement.  In addition, a condition precedent to the Effective Date is the approval of a settlement of the Solyndra Litigation between Suntech Holdings and Solyndra in Suntech Holdings' official liquidation in the Cayman Islands.[4]

### b.    The ECD Antitrust Litigation

On October 4, 2013, ECD, a former solar panel manufacturer based in Michigan, filed a complaint in the United States District Court for the Eastern District of Michigan, against, among others, Suntech Holdings and Suntech America, asserting violations of the Sherman Act and Michigan's Antitrust Reform Act.  As with the Solyndra Litigation, ECD alleged that Suntech America and the other defendants spearheaded a price-fixing scheme in order to sell their solar panels in the United States at below cost prices in order to force ECD out of business. On April 18, 2014, the defendants in the ECD Litigation, including Suntech America and Suntech Holdings, filed a joint motion to dismiss the complaint.  The District Court granted such motion on October 31, 2014, thereby dismissing the ECD Litigation.  ECD, thereafter, filed two post-judgement motions: a motion to reconsider such dismissal (the "**Motion to Reconsider**") and a motion to alter the judgment and grant ECD leave to amend its complaint (the "**Motion to Amend**").

On August 20, 2015, the District Court denied the Motion to Reconsider and, on September 4, 2015, denied the Motion to Amend.  ECD has since appealed those decisions and the dismissal of its complaint to the United States Court of Appeals for the Sixth Circuit.  ECD did not include Suntech America in its notice of appeal.

---

[4] Additional information regarding Suntech Holdings' liquidation proceedings in the Cayman Islands is set forth in the First Day Declaration.

On April 13, 2015, ECD filed the ECD Claim.  On November 6, 2015, the Debtors filed an objection to the ECD Claim seeking to disallow such Claim or estimate such Claim for Allowance, Distribution and reserve purposes under any chapter 11 plan in the Chapter 11 Cases.  On January 5, 2016, ECD filed a response to the Debtors' objection.  The hearing on the Debtors' objection to the ECD Claim is scheduled for January 13, 2016.

### c.    The Wuxi Litigation

On July 14, 2014, Wuxi filed suit against Suntech Arizona in an Arizona state court, alleging breach of contract in connection with the purchase of certain solar products from Wuxi.  The complaint seeks damages in excess $36 million.  Because this action was still in its initial stages as of the Petition Date, no specific counter-claims or defenses were asserted by the Debtors.  On April 10, 2015, Wuxi filed proof of claim no. 33 against Suntech Arizona on account of this complaint.[5]

### d.    The Products Liability Lawsuits

Suntech America is a co-defendant in three separate lawsuits in California state courts that allege products liability claims in connection with roof-tile solar panels designed by a third party and sold by Suntech America.

Suntech America tendered the Products Liability Lawsuits to its insurers, XL Insurance (China) Company Limited, Wausau Underwriters Insurance Company, Liberty Mutual Fire Insurance Company, Hartford Casualty Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA and Travelers Property Casualty Company of America (collectively, the "**Insurers**").  The Insurers are defending Suntech America with a reservation of rights.

---

[5] As is described in greater detail in Article III.F below, Wuxi has asserted more than $145 million in Claims in the aggregate against the Debtors.

Since 2013, Suntech America and the Insurers participated in numerous mediation efforts to resolve the Products Liability Lawsuits.  On April 20, 2015, the Bankruptcy Court entered an Order modifying the automatic stay in the Debtors' Chapter 11 Cases to permit the plaintiffs in the Products Liability Lawsuits to pursue their respective actions solely to the extent of insurance proceeds.  In connection with the Debtors' consent to lift the automatic stay, the plaintiffs agreed to waive any claims against the Debtors.  At that time, the Insurers and Suntech America's co-defendants in the Product Liability Lawsuits did not agree to waive their claims, if any, against the Debtors.

As a result of their mediation efforts, the Debtors, the Debtors' co-defendants, the Insurers and the plaintiffs have entered into a class action settlement agreement that will be presented to the appropriate court(s) for approval.  In addition, on November 9, 2015, the Debtors filed a motion, pursuant to Bankruptcy Rule 9019, asking the Bankruptcy Court to approve such settlement agreement (and a related settlement agreement).[6]  That motion was approved by the Bankruptcy Court on December 3, 2015.  See Docket No. 412.

The settlement provides approximately $10.6 million in aggregate recoveries to the plaintiffs.  The Insurers are contributing $1,250,000.00 to the settlement fund on behalf of their insured, Suntech America, and Suntech America is not contributing any money to the settlement fund.  Apart from the settlement, the claimants asserting Claims against the Debtors based upon the Products Liability Lawsuits, including Wuxi (only to the extent such is a Products Liability Claim), are waiving all such Claims against the Debtors to the extent they participate in the class action settlement.

---

[6] The related settlement agreement resolved the Debtors' claims in the bankruptcy proceeding of Jatco, Inc., which claims arose, in part, from the issues in the Products Liability Lawsuits.

## C.    The Chapter 11 Cases

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

### 1.    First Day Orders

On the Petition Date, in addition to the voluntary petitions for relief filed by the Debtors, the Debtors filed a number of motions and applications seeking certain "first day" relief.  A summary of the relief obtained pursuant to the First Day Motions is set forth below:

- ●    *Joint Administration Motion.*  Pursuant to the *Motion of Debtors for Order under Fed. R. Bankr. P. 1015 and Del. Bankr. L. R. 1015-1 Authorizing Joint Administration of Chapter 11 Cases* [Docket No. 2], the Bankruptcy Court entered an Order [Docket No. 16] authorizing the joint administration of the Chapter 11 Cases for procedural purposes only.

- ●    *Application to Retain Upshot Services LLC.*  Pursuant to the *Application of Debtors for an Order Appointing UpShot Services LLC as Claims and Noticing Agent* [Docket No. 3], the Bankruptcy Court entered an Order [Docket No. 21] authorizing the Debtors to retain UpShot Services LLC as claims and noticing agent for the Chapter 11 Cases.[7]

- ●    *Shipping and Warehousing Motion.*  Pursuant to the *Motion of Debtors for an Order (I) Authorizing Payment of Certain Prepetition Shipping, Warehousing and Related Claims and (II) Granting Certain Related Relief* [Docket No. 4], the Bankruptcy Court entered an Order [Docket No. 4] authorizing the Debtors to pay certain prepetition shipping, warehousing and related claims.

- ●    *Cash Management Motion.*  Pursuant to the *Motion of Debtors for an Order (I) Authorizing Continued Use of Existing Cash Management System and (II) Granting Certain Related Relief* [Docket No. 5], the Debtors obtained the entry of interim and final Orders [Docket Nos. 19 and 79] that, among other things, (i) authorized the Debtors to maintain and use their existing cash management system, and (ii) granted the Debtors a waiver of certain bank account and related requirements of the UST.

- ●    *Utilities Motion.*  Pursuant to the *Motion of Debtors for an Order Prohibiting (I) Utility Companies from Altering or Discontinuing Service on Account of Prepetition Invoices, (II) Approving Deposit as Adequate Assurance of Payment*

---

[7]  Additionally, on February 2, 2015, the Bankruptcy Court entered an order [Docket No. 80] authorizing the Debtors to retain UpShot, pursuant to section 327(a) of the Bankruptcy Code, to serve as administrative agent to the Debtors in the provision of certain administrative services falling outside the scope of 28 U.S.C. § 156(c).

RLF1 13239330v.6

*and (III) Establishing Procedures for Resolving Requests by Utility Companies for Additional Assurance of Payment* [Docket No. 6], the Bankruptcy Court entered interim and final Orders [Docket Nos. 17 and 81] authorizing and approving the provision of adequate assurance of payment to the Debtors' utility service providers under section 366 of the Bankruptcy Code, while allowing the Debtors to avoid the threat of imminent termination of their utility services from those utility companies.

2.      **Appointment of the Committee**

On January 22, 2015, the UST appointed the Committee consisting of the following three (3) members:  (a) Gintech Energy Corp.; (b) Solyndra; and (c) Wuxi Suntech Power Co., Ltd.  Wuxi serves as the chairman of the Committee.

3.      **Employment of Professionals and Advisors**

e.      **Debtors' Professionals**

On February 5, 2015, the Bankruptcy Court entered an Order [Docket No. 82] authorizing the Debtors to retain Richards, Layton & Finger, P.A. as bankruptcy counsel to the Debtors.  The Debtors have also retained several ordinary course professionals in the Chapter 11 Cases pursuant to the procedures set forth in the *Order Authorizing the Debtors to Employ and Compensate Professionals Utilized in the Ordinary Course of Business, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 83].

f.      **Committee Professionals**

On March 16, 2015, the Bankruptcy Court entered Orders [Docket Nos. 147 and 145] authorizing the Committee to retain Sheppard Mullin Richter & Hampton LLP, as lead counsel to the Committee, and Pepper Hamilton LLP, as Delaware counsel to the Committee. On March 17, 2015, the Bankruptcy Court entered an Order [Docket No. 154] authorizing the retention of FTI Consulting, Inc. as financial advisor to the Committee.

4.      <u>Sale of Suntech Arizona's Assets and the Inventory Sales</u>

Prior to the Petition Date, the Debtors negotiated and entered into an asset purchase agreement providing for Suntech Arizona to sell substantially all of its assets used to manufacture PV modules to Vasari for approximately $900,000.  On January 19, 2015, the Debtors filed a motion [Docket No. 32] to approve the Vasari APA.   The motion to approve the Vasari APA was originally set for hearing on February 9, 2015.   Upon appointment, the Committee requested that the Debtors adjourn the hearing on the motion in order to implement informal bidding procedures with the hope of receiving higher or otherwise better bids for the Manufacturing Assets.   At the Committee's request, the Debtors adjourned that hearing and agreed to work with the Committee and their advisors to solicit additional bids for the Manufacturing Assets.

Following this adjournment, on March 12, 2015, Vasari, in accordance with the terms of the Vasari APA, sent written notice to counsel for the Debtors terminating the Vasari APA.  Thereafter, the Debtors and the Committee continued to actively pursue potential bids and indications of interest with respect to the Manufacturing Assets from several parties.   After soliciting any and all bids from interested parties, Deltro Electric Ltd.'s bid in the amount of $555,000.00 was selected by the Debtors and the Committee as best resulting bid for the assets. On April 24, 2015, Suntech Arizona entered into the APA with the Purchaser.  Two days later, on April 26, 2015, the Debtors filed a motion [Docket No. 194] to approve the APA.  On May 11 2015, the Bankruptcy Court entered an Order [Docket No. 215] approving the motion.  The sale was consummated on May 15, 2015.

Additionally, on the Petition Date, Suntech America owned PV module inventory with a book value of approximately $6.5 million.  Suntech America, utilizing the services of its

27

former sales staff serving as independent contractors, continued to sell the remaining inventory in the ordinary course of business during the Chapter 11 Cases.  As of the date hereof, nearly all of that inventory has been sold.

5.      **Rejection of Executory Contracts and Unexpired Leases**

Prior to the Petition Date, the Debtors were party to two non-residential real property leases.  One lease was for office space located in San Francisco, California (the "**San Francisco Lease"**) and the other lease was for a facility located in Goodyear Arizona that housed the Manufacturing Assets (the "**Goodyear Lease**").

On May 12, 2015, the Debtors filed a motion [Docket No. 221] (the "**Extension Motion**") seeking an extension of the period by which Debtors must assume or reject any unexpired non-residential real property leases through and including August 10, 2015.

On May 11, 2015, the Bankruptcy Court entered an Order [Docket No. 215] approving the rejection of the Goodyear Lease, effective as of May 15, 2015.

On August 10, 2015, the San Francisco Lease was rejected by operation of law.

6.      **Claims Process and Bar Date**

a.      **Section 341(a) Meeting of Creditors**

On February 9, 2015, the UST commenced the meeting of creditors in the Chapter 11 Cases pursuant to section 341(a) of the Bankruptcy Code.  The meeting was adjourned and resumed and concluded on March 17, 2015.

b.      **Schedules and Statements**

Each of the Debtors filed its Schedules with the Bankruptcy Court on February 26, 2015.

### c. **Bar Dates**

Pursuant to the Bar Date Order, the Bankruptcy Court established (i) April 13, 2015 at 5:00 p.m. (ET) as the deadline for Creditors (other than Governmental Units) to file proofs of claim in the Chapter 11 Cases; (ii) July 13, 2015 at 5:00 p.m. (ET) as the deadline for Governmental Units to file proofs of claim in the Chapter 11 Cases; and (iii) the Rejection Bar Date (collectively, the "**Bar Dates**").   Notice of the Bar Dates was served on all potential creditors of the Debtors' Estates on or before March 6, 2015.

### D. **Certain Federal Income Tax Consequences**

The confirmation and execution of the Combined Plan and Disclosure Statement may have tax consequences to Holders of Claims and Equity Interests.  The Debtors do not offer an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Combined Plan and Disclosure Statement. All Holders of Claims and Equity Interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of the Combined Plan and Disclosure Statement.  This Combined Plan and Disclosure Statement is not intended, and should not be construed, as legal or tax advice to any Creditor, Equity Interest Holder or other party in interest.

### E. **Alternate Plan**

If the Combined Plan and Disclosure Statement is not confirmed, the Debtors, the Committee, or any other party in interest could attempt to formulate a different plan.   The additional costs, including, among other amounts, additional professional fees or asserted substantial contribution claims, all of which would constitute Administrative Expense Claims (subject to allowance), however, may be so significant that one or more parties in interest could

request that the Chapter 11 Cases be converted to chapter 7.  Accordingly, the Debtors believe that the Combined Plan and Disclosure Statement enables Creditors to realize the best return under the circumstances.

**F.**      **The Plan Settlement**

From the very early stages of these Chapter 11 Cases, the Settlement Parties engaged in extensive negotiations with the goal of consensually resolving these cases.  These negotiations were ultimately successful and resulted in the Plan Settlement.  The Plan Settlement sets forth the material terms and forms the basis for this Combined Plan and Disclosure Statement.

The allowance, classification and treatment of Allowed Claims and Equity Interests provided for herein takes into account the relative priority and rights of such Claims and Equity Interests in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise.

The Plan Settlement provides for the resolution of the Claims of two of the Debtors' largest and most significant Creditors, Solyndra and Wuxi, thereby fixing and allowing on a final basis the amount of such Claims as of the Effective Date, and waiving any objections or other challenges to such fixed, Allowed claims.

Solyndra asserts a $1.5 billion Claim against the Debtors, and Wuxi asserts Claims against the Debtors in the aggregate amount of more than $145 million.  The Debtors dispute the Solyndra and Wuxi Claims, however, they acknowledge that litigating these Claims would be expensive, time consuming and attendant with the risk that the Debtors may not ultimately be successful in any such litigation.  Accordingly, the Debtors have agreed to settle

the Solyndra and Wuxi Claims in accordance with the terms of the Plan Settlement, as incorporated herein.  The settlement represents a substantial compromise in that Solyndra's and Wuxi's Claims shall be Allowed in the amounts of $216,265,149.62 and $144,176,766.41, respectively, and Solyndra and Wuxi will receive a total Distribution of $10,312,500, plus sixty percent (60%) of the total value of any Additional Assets.

The Debtors believe the Plan Settlement is supported by their sound business judgment, is the result of extensive, arm's-length negotiations and is in the best interest of their Estates.  When considering the costs, complexity and delay of litigation challenging the Solyndra and Wuxi Claims, the possibility of success in such litigation, and the interest of the Creditors, the Debtors believe the terms of the Plan Settlement are well within the range of reasonableness as established by the applicable law for review and consideration of settlements by the Bankruptcy Court.

The Debtors believe the Plan Settlement is beneficial to all of the Debtors' Creditors.  If the Solyndra and Wuxi Claims were Allowed in the asserted amounts, such Claims would substantially dilute the recovery of other General Unsecured Claim Holders.  The Debtors estimate Allowed General Unsecured Claims in Class 3 of approximately $6 million and, pursuant to the Plan Settlement, such Holders will share at least $1.75 million.  Accordingly, such Holders are projected to recover at least thirty percent (30%) with respect to their Claims should the Debtors' estimate of the amount of Allowed Class 3 Claims be correct.  Pursuant to the Plan Settlement, Solyndra and Wuxi, by comparison, are sharing $10,312,500 amongst themselves on account of their approximately $360 million in Allowed Claims (and approximately $1.75 billion in asserted Claims), representing an approximate recovery of three percent (3%).  Additionally, in partial consideration for the discharge, cancellation and release of

31

the Holdings Loan and all amounts due and owing thereunder (and release and waiver of any claims related thereto), which is an integral part of the Plan Settlement, all non-Debtor Affiliate Claims are being subordinated to Solyndra's Claim, Wuxi's Claim and other General Unsecured Claims. These substantial non-Debtor Claims, in the approximate amount of $20 million, would further dilute General Unsecured Claim recoveries.

Moreover, by the Plan Settlement, Wuxi has agreed to reconfirm its obligation to honor Old Wuxi's standard warranties in effect on the day Wuxi purchased Old Wuxi's assets in the PRC with the same force, effect and validity as such warranties existed against Old Wuxi. The relevant warranty acknowledgement letter evidencing Wuxi's agreement to honor Old Wuxi's standard warranties is attached hereto as Exhibit C.

Furthermore, by the Plan Settlement, Wuxi and the Debtors have agreed to cooperate in good faith to collect from Mesquite the Mesquite Receivable. Specifically, Wuxi has agreed to execute the Reaffirmation Agreement in favor of Mesquite immediately upon Mesquite's agreement in writing (or by a stipulation approved by the Bankruptcy Court) to pay the Mesquite Receivable to the Debtors in immediately available funds. The Reaffirmation Agreement will be held in escrow until the Effective Date. In the event that Mesquite fails to pay the Mesquite Receivable, the Effective Date shall not occur unless and until such funds are collected and, in connection therewith, the Debtors and the Committee have agreed to take all actions as are available at law or equity to enforce the payment of the Mesquite Receivable, including the commencement of litigation against Mesquite to collect the Mesquite Receivable, plus all compensatory and punitive damages as may be available at law or equity, including legal fees and costs. Wuxi's cooperation and agreement to execute the Reaffirmation Agreement

represents a material part of the Plan Settlement, and in consideration thereof, the Settlement Parties have agreed to the Wuxi Minimum Distribution.

The Debtors and the Settlement Parties worked in good faith to reach an agreement and establish the terms of the Plan Settlement, which, as described further below, will provide Holders of Allowed Claims with immediate Distributions of Cash.  Without such Plan Settlement, it is likely that such Distributions would be significantly reduced in the future by the cost of claims litigation with, among others, Solyndra and Wuxi.

For all these reasons, the Debtors believe the Plan Settlement is in the best interests of their Estates.

## G.    Best Interests Test and Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Equity Interest either (a) accept the Combined Plan and Disclosure Statement or (b) receive or retain under the Combined Plan and Disclosure Statement property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  Because the majority of the Debtors' assets have already been liquidated to Cash, the value of any Distributions if the Debtors' Chapter 11 Cases were converted to a case under Chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Combined Plan and Disclosure Statement.  This is because conversion of the Chapter 11 Cases to chapter 7 cases would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals. The "learning curve" that the trustee and new professionals would be faced with comes with potential additional costs to the Estates and with a delay compared to the time of Distributions under the Combined Plan and Disclosure Statement.  Furthermore, a chapter 7 trustee would be

33

entitled to statutory fees relating to the Distributions of the already monetized assets made to creditors.  Accordingly, a portion of the cash currently available for Distribution to Holders of Claims, including unsecured creditors, would instead be paid to the chapter 7 trustee.

Moreover, the Debtors believe that, absent the structure of the Combined Plan and Disclosure Statement as established by the Plan Settlement, the Debtors' Creditors would receive a significantly reduced recovery on account of their Claims following a conversion to chapter 7 for at least three reasons.  First, the Plan Settlement provides for the resolution of two significant disputed Claims against the Debtors (Solyndra's $1.5 billion Claim and Wuxi's approximate $145 million Claim).  Absent this resolution, the chapter 7 trustee would be forced to expend significant resources litigating or otherwise handling these Claims, thereby reducing the amount of Cash ultimately available for Distribution to Creditors.  Second, by the Plan Settlement, the Settlement Parties have agreed to take certain actions that will facilitate the collection of additional funds for Distribution to Holders of Allowed Claims and for the resolution of numerous Claims against the Debtors.  Specifically, Wuxi has agreed reconfirm its agreement to honor Old Wuxi's standard warranties in effect on the day Wuxi purchased Old Wuxi and thereby resolve numerous Claims against the Debtors based of such warranties.  Additionally, Wuxi has agreed to execute the Reaffirmation Agreement, which will facilitate the Debtors' receipt of the Mesquite Receivable and provide Cash for Distribution to Holders of Allowed Claims.  These beneficial agreements would no longer be in place following a conversion to chapter 7.  Third, the Debtors' Affiliates have agreed to subordinate their Claims to the proposed Distributions to Classes 3 and 4, which agreement would also terminate following a conversion to chapter 7.

As a result, the Debtors believe that the Estates would have fewer funds to be distributed in a hypothetical chapter 7 liquidation than they would if the Combined Plan and Disclosure Statement is confirmed, and therefore Holders of Claims in all Impaired Classes will recover less than in the hypothetical chapter 7 cases.   A hypothetical chapter 7 liquidation analysis is attached to this Combined Plan and Disclosure Statement as <u>Exhibit E</u>. Accordingly, the Debtors believe that the "best interest" test of Bankruptcy Code section 1129 is satisfied.

**H.**     **Releases by the Debtors and Third Parties**

The release provisions set forth in Articles XII.B. and XII.C. of this Combined Plan and Disclosure Statement are an integral part of this Combined Plan and Disclosure Statement.   Absent such releases, the Settlement Parties would not have agreed to the terms of the Plan Settlement and the Holders of Allowed Claims would receive a diminished (or, in some cases, no) recovery on account of such Claims.

**I.**     **Certain Risk Factors to be Considered**

Holders of Claims and Equity Interests should read and consider carefully the risk factors below, as well as the other information set forth in the Combined Plan and Disclosure Statement, the documents delivered together with this Combined Plan and Disclosure Statement, and the documents referred to or incorporated by reference in this Combined Plan and Disclosure Statement, before voting to accept or reject the Combined Plan and Disclosure Statement.   These factors should not be regarded as constituting the only risks present in connection with the Combined Plan and Disclosure Statement and its implementation.

1.    **Risk Factors that May Affect the Debtors' Ability to Consummate the Combined Plan and Disclosure Statement**

    a.    **Debtors May Not Be Able to Secure Confirmation of the Combined Plan and Disclosure Statement**

As is described in greater detail in Section VI.A.4 below, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan. While, as set forth below, the Debtors believe that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Bankruptcy Court will agree.

    b.    **Risk of Non-Occurrence of the Effective Date**

Although the Debtors believe that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

For example, a condition precedent to the occurrence of the Effective Date is the availability of the Cash proceeds from the Mesquite Receivable. While Wuxi and the Debtors have agreed to cooperate in good faith to collect the Mesquite Receivable from Mesquite, there can be no guarantee if and when the Debtors will be able to collect such receivable.

In addition, in order for the Effective Date to occur, the Debtors are required to have sufficient Cash on hand to fully fund the Class 3 and Class 4 Distributions. While the Debtors believe, based on their estimates of Priority Tax Claims, Administrative Expense Claims, Secured Claims and Priority Non-Tax Claims that must be paid or reserved for, that the Debtors will have sufficient Cash on hand to fully fund the Class 3 and Class 4 Distributions, there can no guarantee that the Debtors' estimates are correct.

### c. Parties May Object to the Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. As is described in greater detail in Section VI.A.5 below, the Debtors believe that the classification of Claims and Equity Interests under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion. If it does not reach the same conclusion, and for example, the Bankruptcy Court determines that certain Claims, such as the ECD Claim, should be placed in Class 4, such a determination may prevent the occurrence of the Effective Date because Wuxi may not receive the Wuxi Minimum Distribution (which, absent a waiver, is a condition precedent to the occurrence of the Effective Date).

### 2. Risk Factors that may Affect Distributions under the Combined Plan and Disclosure Statement

The estimates of Allowed Claims and recoveries for Holders of Allowed Claims set forth in this Combined Plan and Disclosure Statement are based on various assumptions. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary significantly from the estimated Claims contained in this Combined Plan and Disclosure Statement. Moreover, the Debtors cannot determine with any certainty at this time the number or amount of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the recoveries to Holders of Allowed Claims under the Combined Plan and Disclosure Statement.

For example, the Debtors have estimated that the Allowed Claims in Class 3 will be no more than $6 million on the Effective Date. However, this estimate is based on the

assumption that, prior to the Effective Date, the Debtors' pending objection to the ECD Claim will be sustained or that the Bankruptcy Court will estimate the ECD Claim at $0.00. If such Claim is not disallowed or estimated at $0.00 on or prior to the Effective Date, the timing and amount of any Distribution that the Holders of Allowed Claims in Class 3 will receive may be materially and adversely affected. If, for example, the ECD Claim is Allowed in the amount of $950 million, the percentage recovery for holders of Allowed Claims in Class 3 may be less than .2%.

In addition, the Debtors have estimated that Allowed Priority Tax Claims will be between $300,000 and $450,000. However, this estimate is based on the assumption that proof of claim no. 6, which is an alleged Priority Tax Claim that was filed in the amount of approximately $4.5 million by the California State Board of Equalization (the "**BOE**"), will be significantly reduced.[8] If such Claim is not significantly reduced, among other things, (i) the Effective Date may not occur because the Debtors may be unable to fully fund the Class 3 and Class 4 Distributions and/or (ii) the timing and amount of any Distribution that the Holders of Allowed Claims will receive may be materially and adversely affected.

## IV. TREATMENT OF UNCLASSIFIED CLAIMS

### A. Administrative Expense Claims

Requests for Administrative Expense Claims must be filed by no later than the Administrative Expense Bar Date. On the Effective Date or as soon thereafter as is practical, each Holder of an Allowed Administrative Expense Claim shall receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the Bankruptcy Court) or such other treatment as may be agreed upon by such Holder of an Allowed

---

[8] The Debtors believe that the BOE's alleged Priority Tax Claim is overstated because the estimated error rate derived by the auditor is erroneous. Among other things, the error rate was based on invoices in which tax was actually paid.

38

Administrative Expense Claim on the Effective Date.  Notwithstanding anything to the contrary herein, all Administrative Expense Claims based on the fees and expenses of Professionals shall only be paid after Court authorization.

Fees Claims that are charged and incurred from and after October 1, 2015 are projected to be no more than $1,900,000, which fees and expenses include, without limitation: (i) the fees and expenses of the Debtors' professionals associated with (a) drafting, negotiation and confirmation of the Combined Plan and Disclosure Statement, and (b) claims objections/reconciliation for Claims other than Class 3 Claims (but including the objection to the ECD Claim), and Distributions under the Plan; and (ii) the fees and expenses of the Committee's Professionals in an amount not to exceed the Committee Fee Cap associated with, among other things, claims objections/reconciliation of (a) Class 3 Claims (other than the objection to ECD's Claim), and (b) the California Board of Equalization priority claim.

## B.   Priority Tax Claims

On the Effective Date or as soon thereafter as is practical, each Holder of an Allowed Priority Tax Claim, if any, shall receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the Bankruptcy Court), or such other treatment as may be agreed upon by such Holder of an Allowed Priority Tax Claim. Allowed Priority Tax Claims are projected to be approximately $300,000 to $450,000.

## C.   Payment of Statutory Fees

All Statutory Fees prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Plan Administrator shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee.  Notwithstanding the limited substantive

consolidation of the Debtors called for in the Combined Plan and Disclosure Statement, each of the Debtors shall remain obligated to pay quarterly fees to the UST until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

## V.  SUMMARY OF DEBTORS' ASSETS; SUMMARY OF TREATMENT OF CLAIMS AND EQUITY INTERESTS AND ESTIMATED RECOVERIES

### A.  Summary of Assets

| Asset | Estimated Value |
|---|---|
| Cash and Cash Equivalents | $16.3 million[9] |
| Additional Assets | $0.00 |

### B.  Summary of Treatment of Claims and Equity Interests and Estimated Recoveries

The following chart provides a summary of treatment of each Class of Claims and Equity Interests (other than Administrative Expense Claims and Priority Tax Claims) and an estimate of the recoveries of each Class.[10]  The treatment provided in this chart is for informational purposes only and is qualified in its entirety by Article VII of the Combined Plan and Disclosure Statement.

---

[9]  This amount assumes that the Debtors have received the full amount of the Mesquite Receivable in Cash (*i.e.*, $3,000,000.00).

[10]  The amounts represent estimated Allowed Claims, and do not represent amounts actually asserted by the Creditors in proofs of claim or otherwise.  The Debtors have not completed their analysis of Claims in the Chapter 11 Cases and objections to such Claims have not been fully litigated.  Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time.  Rather, the actual amount of the Allowed Claims may be more or less than estimated.

| Class | Estimated Allowed Claims and Equity Interests | Treatment / Voting Status | Estimated Recovery to Holders of Allowed Claims and Equity Interests[11] |
|---|---|---|---|
| Class 1 - Secured Claims | Undetermined | Unimpaired / Deemed to Accept | 100% |
| Class 2 - Priority Non-Tax Claims | $0.00 | Unimpaired / Deemed to Accept | 100% |
| Class 3 - General Unsecured Claims (Other than those in Class 4) | $6,000,000 | Impaired / Entitled to Vote | 30% |
| Class 4 - General Unsecured Claims of Solyndra and Wuxi | $360,441,916.03 | Impaired / Entitled to Vote | 2.86% |
| Class 5 - Products Liability Claims | Undetermined | Impaired / Entitled to Vote | Subject to insurance recoveries |
| Class 6 - Affiliate Claims | $19,800,000 | Impaired / Entitled to Vote | Undetermined |
| Class 7 - Intercompany Claims | $52,300,000 | Impaired / Deemed to Reject | 0% |
| Class 8 - Equity Interests | N/A | Impaired / Entitled to Vote | Undetermined |

## VI.  CONFIRMATION AND VOTING PROCEDURES

### A.  Confirmation Procedure

#### 1.  Disclosure Statement Hearing

On January __, 2016, the Bankruptcy Court entered the Disclosure Statement Order.  The Disclosure Statement Order approved the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and authorized the Debtors to solicit acceptances of the Combined Plan and Disclosure Statement.

---

[11] The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Cases.  As set forth above in footnote 10, the actual amount of the Allowed Claims may be more or less than estimated.  Thus the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court.

## 2.    Confirmation Hearing

Pursuant to the Disclosure Statement Order, a hearing before the Honorable Christopher S. Sontchi has been scheduled for [•], **2016 at** [•] **(ET)**, at the Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19081 to consider confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.    The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

## 3.    Procedure for Objections

Any objection to confirmation of the Combined Plan and Disclosure Statement must: (i) be in writing, (ii) conform to the Bankruptcy Rules and Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and (iii) be filed with the Bankruptcy Court and served so as to be actually received on or before [•], **2016 at** [•] **(ET)**, by (i)  counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn.: Mark D. Collins, Esq., Paul N. Heath, Esq. and Zachary I. Shapiro, Esq.) (Facsimile:  302-651-7701); (ii)  the UST, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn.:    Tiiara N.A. Patton, Esq.)  (Facsimile:    302-573-6497);  and  (iii) counsel  for  the Committee, (a) Sheppard Mullin Richter & Hampton LLP, 30 Rockefeller Plaza, New York, New York 10112 (Attn.:  Craig A. Wolfe, Esq. and Malani J. Cademartori, Esq.) (Facsimile: 212-653-8701) and (b) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, Delaware 19899 (Attn.:  David M. Fournier, Esq.) (Facsimile: 302-421-8390).  **Unless an objection is timely filed and served by the Confirmation Objection**

**Deadline, such objection may not be considered by the Bankruptcy Court at the Confirmation Hearing.**

> **4.** **Requirements for Confirmation**

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in these Chapter 11 Cases is that the Combined Plan and Disclosure Statement be: (i) accepted by all Impaired Classes of Claims and Equity Interests or, if rejected by an Impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; and (ii) feasible. The Bankruptcy Court must also find that:

> a. The Combined Plan and Disclosure Statement has classified Claims and Interests in a permissible manner;

> b. The Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

> c. The Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtors believe that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

> **5.** **Classification of Claims and Equity Interests**

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Equity Interest in a particular Class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests in such Class. The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with

RLF1 13239330v.6

Secured Claims, Priority Non-Tax Claims, General Unsecured Claims, General Unsecured Claims of Solyndra and Wuxi, Products Liability Claims, Affiliate Claims, Intercompany Claims and Equity Interests. The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Equity Interests in the same Class and thus meet the requirements of section 1122 of the Bankruptcy Code.

Specifically, the Combined Plan and Disclosure Statement provides for the separate classification of the Claims of Solyndra and Wuxi. This classification is appropriate for several reasons. As set forth above, Solyndra and Wuxi are Settlement Parties and, pursuant to the Plan Settlement, have agreed to resolve their Claims against the Debtors in accordance with the terms of the Combined Plan and Disclosure Statement. In connection therewith, Solyndra has agreed to an Allowed Claim in amount significantly less than the amount asserted in Solyndra's proof of claim, thereby resolving the pending litigation as against the Debtors without the Debtors' incurrence of further litigation costs should the Combined Plan and Disclosure Statement be confirmed. Furthermore, Wuxi has agreed to undertake numerous actions, including reconfirming its agreement to honor Old Wuxi's standard warranties and executing the Reaffirmation Agreement upon Mesquite's agreement in writing to pay the Mesquite Receivable, in an effort to facilitate (1) the receipt of Cash for Distribution to Holders of Allowed Claims, and (2) the resolution of numerous Claims based on warranties against the Debtors. Therefore, the Combined Plan and Disclosure Statement appropriately provides for their Claims to be separately classified.

6.    **Impaired Claims or Equity Interests**

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes Impaired by the Combined Plan and Disclosure Statement and receiving a payment or

Distribution under the Combined Plan and Disclosure Statement may vote on the Combined Plan and Disclosure Statement.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable or contractual rights of the Holders of such Claims or Interests treated in such Class.  The Holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement.  The Holders of Claims or Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.  Finally, the Holders of Claims or Equity Interests whose Claims or Equity Interests are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

7. **Eligibility to Vote on the Combined Plan and Disclosure Statement**

Unless otherwise Ordered by the Bankruptcy Court, only Holders of Allowed Claims or Equity Interests in Classes 3, 4, 5, 6 and/or 8 may vote on the Combined Plan and Disclosure Statement.  Further, subject to the tabulation procedures that were approved by the Disclosure Statement Order, in order to vote on the Combined Plan and Disclosure Statement, you must hold an Allowed Claim or Equity Interest in Classes 3, 4, 5, 6 and/or 8, or be the Holder of a Claim that has been temporarily Allowed for voting purposes only pursuant to the approved tabulation procedures or under Bankruptcy Rule 3018(a).

8. **Solicitation Notice**

All Holders of Allowed Claims and Equity Interests in Classes 3, 4, 5, 6 and/or 8 will receive (i) the Confirmation Notice, (ii) a form of Ballot, and (iii) a copy of the Combined

Plan and Disclosure Statement. All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will only receive a copy of the Confirmation Notice.

**9.      Procedure/Voting Deadlines**

In order for your Ballot to count, you must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Balloting Agent by either (a) mailing the Ballot to the Balloting Agent at the following address:  UpShot Services LLC, 8269 E. 23rd Ave., Suite 275, Denver, Colorado 80238; or (b) uploading the Ballot on the Balloting Agent's website at http://www.upshotservices.com/SuntechUS.

Ballots must be submitted electronically, or the Balloting Agent must RECEIVE physically original ballots by mail or overnight delivery, on or before _____, at 4:00 p.m. (ET) (the "**Voting Deadline**"). Subject to the tabulation procedures approved by the Disclosure Statement Order, you may not change your vote once a Ballot is submitted electronically or the Balloting Agent receives your original paper ballot.

Subject to the tabulation procedures approved by the Disclosure Statement Order, any Ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Plan and Disclosure Statement.

**10.      Acceptance of the Combined Plan and Disclosure Statement**

As a Creditor, your acceptance of the Combined Plan and Disclosure Statement is important.  In order for the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the

46

Combined Plan and Disclosure Statement.  At least one Impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement. The Debtors urge that you vote to accept the Combined Plan and Disclosure Statement.  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THE BALLOT.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND, IF NECESSARY, LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

11.    **Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Combined Plan and Disclosure Statement for all purposes, including for purposes of determining acceptance of the Combined Plan and Disclosure Statement by such Class under Section 1129(a)(8) of the Bankruptcy Code.

B.    **Bar Dates for Fee Claims**

All requests for compensation or reimbursement of Professionals retained in these Chapter 11 Cases for services performed and expenses incurred prior to the Effective Date shall be filed and served on:  (i) counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn.:  Mark D. Collins, Esq., Paul N. Heath, Esq. and Zachary I. Shapiro, Esq.) (Facsimile:  302-651-7701); (ii)  the UST, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn.:  Tiiara N.A. Patton, Esq.) (Facsimile:  302-573-6497); and (iii) counsel for the Committee, (a) Sheppard, Mullin, Richter & Hampton LLP, 30 Rockefeller Plaza, New

York, New York 10112 (Attn.:  Craig A. Wolfe, Esq. and Malani J. Cademartori, Esq.)

(Facsimile:  212-653-8701) and (b) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N.

Market Street, Wilmington, Delaware 19899 (Attn.:  David M. Fournier, Esq., Donald J.

Detweiler, Esq. and John H. Schanne II, Esq.) (Facsimile:  302-421-8390), and such other

entities who are designated by the Bankruptcy Rules, the Confirmation Order or other Order of

the Bankruptcy Court, by no later than forty-five (45) days after the Effective Date, unless

otherwise agreed by the Debtors.  Upon the Effective Date, any requirement that Professionals

comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or

compensation for services rendered after such date shall terminate, and Professionals may be

employed and paid in the ordinary course of business without any further notice to, or action,

Order, or approval of, the Bankruptcy Court.

## VII.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; ESTIMATED RECOVERIES

Equity Interests and Claims, other than Administrative Expense Claims, and

Priority Tax Claims, are classified for all purposes, including voting, confirmation and

Distribution pursuant to the Combined Plan and Disclosure Statement, as follows:

| Class | Type | Status under Plan | Voting Status |
|---|---|---|---|
| 1 | Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Claims  (Other than Class 4) | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims of Solyndra and Wuxi | Impaired | Entitled to Vote |
| 5 | Products Liability Claims | Impaired | Entitled to Vote |
| 6 | Affiliate Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Deemed to Reject |

48

| Class | Type | Status under Plan | Voting Status |
|-------|------|-------------------|---------------|
| 8 | Equity Interests | Impaired | Entitled to Vote |

## VIII.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.    Treatment of Claims**

    **1.    Class 1 –Secured Claims**

        **a.    Classification**

Class 1 consists of all Secured Claims.

        **b.    Impairment and Voting**

Class 1 is Unimpaired by the Combined Plan and Disclosure Statement.  Holders of Class 1 Claims are deemed to have accepted the Combined Plan and Disclosure Statement and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

        **c.    Treatment**

On the Effective Date or as soon thereafter as is reasonably practical, or on the date such Claim becomes an Allowed Secured Claim or as soon thereafter as is reasonably practical, each Holder of an Allowed Secured Claim shall receive either (a) such treatment as such Holder agrees, or (b) at the Debtors' option (i) payment in full in Cash of the Allowed Amount of such Secured Claim (as determined by settlement or Final Order of the Bankruptcy Court), or (ii) treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

    **2.    Class 2 –Priority Non-Tax Claims**

        **a.    Classification**

Class 2 consists of Priority Non-Tax Claims.

RLF1 13239330v.6

###### b.     **Impairment and Voting**

Class 2 is Unimpaired by the Combined Plan and Disclosure Statement.  Holders of Allowed Priority Non-Tax Claims are deemed to have accepted the Combined Plan and Disclosure Statement and therefore, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

###### c.     **Treatment**

On the Effective Date or as soon thereafter as is reasonably practical, or on the date such Claim becomes an Allowed Priority Non-Tax Claim or as soon thereafter as is reasonably practical, each Holder of an Allowed Priority Non-Tax Claim shall receive payment in full in Cash of the Allowed amount of such Claim (as determined by settlement or Final Order of the Bankruptcy Court) or such other treatment as may be agreed upon by such Holder and the Debtors.

### 3.     **Class 3 – General Unsecured Claims (other than Class 4)**

###### a.     **Classification**

Class 3 consists of General Unsecured Claims other than those Claims in Class 4.

###### b.     **Impairment and Voting**

Class 3 is Impaired.  Holders of Allowed General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

###### c.     **Treatment**

Each Holder of an Allowed General Unsecured Claim in Class 3 shall receive its Pro Rata share of $1.75 million, plus the balance remaining, if any, in the Committee Fee Account after the payment of the Committee's Professionals' Allowed fees and expenses charged and incurred from and after October 1, 2015 through the Effective Date.  In addition,

each Holder of an Allowed General Unsecured Claim in Class 3 shall receive its Pro Rata share of fifteen percent (15%) of the total value of any Additional Assets.

4.    **Class 4 – General Unsecured Claims of Solyndra and Wuxi**

a.    **Classification**

Class 4 consists of the General Unsecured Claims of Solyndra and Wuxi.

b.    **Impairment and Voting**

Class 4 is Impaired.  Holders of Allowed General Unsecured Claims in Class 4 are entitled to vote to accept or to reject the Combined Plan and Disclosure Statement.

c.    **Treatment**

On the Effective Date, the Claims of Solyndra and Wuxi shall be Allowed by the Combined Plan and Disclosure Statement in the following amounts:  $216,265,149.62 for Solyndra; and $144,176,766.41 for Wuxi, comprised of $143,486,112.69 for Wuxi Suntech Power Co., Ltd., and $690,653.72 for Suntech Power Asia Pacific, Ltd.  The Debtors and the Committee shall be deemed to have waived, on the Effective Date, but not before, any and all objections to the allowance of such Claims in the foregoing dollar amounts, and such Allowed Claims shall not be subject to setoff, offset, recoupment, reduction or challenge on any basis.

On the Effective Date or as soon thereafter as is reasonably practical, Solyndra and Wuxi shall receive Distributions in the amounts of $6,062,500.00 and $4,250,000.00, respectively.  In addition, to the extent any Additional Assets are recovered by the Estates or by the Post-Effective Date Debtors, Solyndra and Wuxi shall be entitled to additional Distributions as follows:  (a) forty percent (40%) of the total value of such Additional Assets to Solyndra, and (b) twenty percent (20%) of the total value of such Additional Assets to Wuxi.

51

5.        **Class 5 – Products Liability Claims**

a.        **Classification**

Class 5 consists of all Products Liability Claims.

b.        **Impairment and Voting**

Class 5 is Impaired.  Holders of Allowed Products Liability Claims in Class 5 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.        **Treatment**

On the Effective Date, each Holder of an Allowed Products Liability Claim shall obtain relief from the stays and the injunctions provided for by the Combined Plan and Disclosure Statement for the purposes of:  (i) establishing the Debtors' liability with respect to any such Claim in order to pursue recovery solely against the Debtors' Insurance Policies with third party insurers but not against any other property of the Debtors, the Debtors' Estates, the Post-Effective Date Debtors and/or the Debtors' successors, and (ii) pursuing any other Entity (including any third party insurer) or such other Entity's property to satisfy such Claim.  For the avoidance of doubt, Claims in Class 5 are not General Unsecured Claims.

6.        **Class 6 – Affiliate Claims**

a.        **Classification**

Class 6 consists of all Affiliate Claims.

b.        **Impairment and Voting**

Class 6 is Impaired.  Holders of Allowed Affiliate Claims in Class 6 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

52

c.      **Treatment**

Each Holder of an Allowed Affiliate Claim shall receive a Distribution only after all Distributions to Holders of Allowed Claims in Classes 1, 2, 3 and 4 have been made or for which funds have been fully reserved.  Notwithstanding the foregoing, Holders of Allowed Affiliate Claims shall be entitled to receive twenty-five percent (25%) of any Additional Assets recovered by the Debtors' Estates or by the Post-Effective Date Debtors.

7.      **Class 7 – Intercompany Claims**

a.      **Classification**

Class 7 consists of the Intercompany Claims.

b.      **Impairment and Voting**

Class 7 is Impaired.  Because Holders of Intercompany Claims will not receive any Distribution under the Combined Plan and Disclosure Statement, Class 7 shall be deemed to have voted to reject the Combined Plan and Disclosure Statement.

c.      **Treatment**

On the Effective Date, the Debtors have agreed that any and all Intercompany Claims between the Debtors shall be cancelled and neither Debtor will receive any recovery on account of any Intercompany Claim.

8.      **Class 8 – Equity Interests**

a.      **Classification**

Class 8 consists of the Equity Interests in the Debtors.

b.      **Impairment and Voting**

Class 8 is Impaired.  Holders of Equity Interests in Class 8 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

c.    **Treatment**

Holders of Equity Interests of the Debtors shall receive all of the Debtors' remaining Cash and assets (other than Additional Assets or Cash obtained from the liquidation or collection of Additional Assets), if any, after all of the Distributions contemplated by the Combined Plan and Disclosure Statement have been made to Allowed Claims or for which funds have been fully reserved.  Following Distributions, if any, to Holders of Equity Interests of the Debtors and following the liquidation and/or abandonment of the Debtors' remaining assets, all such Equity Interests shall be cancelled.

B.    **Modification of Treatment of Claims and Equity Interests**

The Debtors and Post-Effective Date Debtors reserve the right to modify the treatment of any Allowed Claim or Equity Interest in any manner adverse only to the Holder of such Claim or Equity Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Equity Interest whose Allowed Claim or Equity Interest, as the case may be, is being adversely affected.

C.    **Cramdown and No Unfair Discrimination.**

In the event that any Impaired Class of Claims or Equity Interests rejects the Plan or is deemed to have rejected the Combined Plan and Disclosure Statement, the Debtors hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Combined Plan and Disclosure Statement in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Combined Plan and Disclosure Statement shall constitute a motion for such relief.

Confirming the Combined Plan and Disclosure Statement under such a circumstance is what is known as a "cramdown."  Among other things, a "cramdown" is

54

appropriate where the Bankruptcy Court finds that such plan does not unfairly discriminate against the objecting classes and is fair and equitable with respect to those objecting classes. A plan unfairly discriminates against a class if another class of equal rank in priority will receive greater value under the plan than the non-accepting class without reasonable justification. A plan is fair and equitable if no claim or interest junior to the objecting class shall receive or retain any claim or interest under the plan.

## IX. PROVISIONS REGARDING THE PLAN ADMINISTRATOR

### A. Appointment of the Plan Administrator

On the Effective Date, a Plan Administrator, who shall be (a) Robert Moon, or (b) another Person jointly selected by the Debtors and the Committee no later than five (5) Business Days prior to the Voting Deadline, shall be appointed and thereafter serve in accordance with this Combined Plan and Disclosure Statement. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise Ordered by the Bankruptcy Court. In the Plan Supplement, the Debtors will identify the material terms of the Plan Administrator's compensation.

### B. Rights and Powers of the Plan Administrator

The Plan Administrator shall, in addition to any powers and authority specifically set forth in other provisions of the Combined Plan and Disclosure Statement, be empowered to act on behalf of the Estates and the Post-Effective Date Debtors to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Combined Plan and Disclosure Statement, (ii) establish, as necessary, disbursement accounts for the deposit and distribution of all amounts distributed under the Combined Plan and Disclosure Statement, (iii) make Distributions in accordance with the Combined Plan and Disclosure Statement, (iv) object to Claims, as appropriate, (v) employ and compensate

55

professionals to represent it with respect to its responsibilities, (vi) assert any of the Debtors'
claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and (vii) exercise
such other powers as may be vested in the Post-Effective Date Debtors and/or the Plan
Administrator by Order of the Bankruptcy Court, pursuant to the Combined Plan and Disclosure
Statement, or as deemed by the Plan Administrator to be necessary and proper to implement the
provisions hereof.    The Plan Administrator may take any and all actions which he deems
reasonably necessary or appropriate to defend against any Claim, including, without limitation,
the right to:  (a) exercise any and all judgment and discretion with respect to the manner in which
to defend against or settle any Claim, including, without limitation, the retention of
professionals, experts and consultants; and (b) enter into a settlement agreement or agreements
without approval of the Bankruptcy Court.

## C.    Post Confirmation Date Expenses of the Plan Administrator

The Plan Administrator shall receive reasonable compensation for services
rendered to the Estates and the Post-Effective Date Debtors pursuant to the Combined Plan and
Disclosure Statement without further Order; provided, however, that the material terms of such
compensation shall be disclosed pursuant to Article IX.A.  In addition, the amount of reasonable
fees and expenses incurred by the Plan Administrator on or after the Effective Date (including,
without limitation, reasonable attorney and professional fees and expenses) may be paid without
further Order.

## X.  PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT

### A.    Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Combined Plan and Disclosure Statement shall be made by check drawn on a domestic bank or an electronic wire.

### B.    Objections to and Resolution of Claims

The Plan Administrator shall have the right to file objections and/or motions to estimate any and all Claims after the Effective Date.  The Plan Administrator shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court.  The Plan Administrator shall further have the authority to resolve and settle any and all Claims without approval of the Bankruptcy Court.

### C.    Claims Objection Deadline

The Plan Administrator, and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims, including Administrative Expense Claims, no later than the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Plan Administrator.

### D.    No Distribution Pending Allowance

Notwithstanding any other provision of the Combined Plan and Disclosure Statement, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Combined Plan and Disclosure Statement.

57

**E.**     <u>**Claims Reserve**</u>

On any date that Distributions are to be made under the terms of the Combined Plan and Disclosure Statement, the Plan Administrator shall reserve Cash or property equal to one-hundred percent (100%) of the Cash or property that would be Distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, unless otherwise Ordered by the Bankruptcy Court following notice to the affected Claim Holder.  Such Cash or property, as the case may be, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

**F.**     <u>**Distribution After Allowance**</u>

Except as provided herein, within the later of (i) seven (7) Business Days after such Claim becomes an Allowed Claim and (ii) thirty (30) days after the expiration of the Claims Objection Deadline, the Plan Administrator shall distribute all Cash or other property to which a Holder of an Allowed Claim is then entitled.

**G.**     <u>**Adjustments to Claims Without Objection**</u>

After the Effective Date, any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be marked as satisfied, adjusted or expunged on the register of Claims in the Chapter 11 Cases by the Balloting Agent at the direction of the Plan Administrator without a Claims objection having to be Filed and without any further notice to or action, Order or approval of the Bankruptcy Court.

**H.**     <u>**Late Claims and Amendments to Claims**</u>

Except as provided herein or otherwise agreed, any and all Holders of proofs of claim Filed after the applicable Bar Date shall not be treated as Creditors for purposes of voting and Distribution pursuant to Bankruptcy Rule 3003(c)(2) and the Bar Date Order unless on or

58

before the Confirmation Date such late Claim has been deemed timely Filed by a Final Order. After the Confirmation Date, a Claim may not be Filed or amended without the authorization of the Bankruptcy Court.

## I.    Distribution Record Date

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes. The Plan Administrator shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, the Plan Administrator shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim Filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are actually known to the Plan Administrator as of the Distribution Record Date.

## J.    Delivery of Distributions

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective proofs of claim Filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Plan Administrator after the date of any related proof of claim; or (3) at the address reflected in the Schedules if no proof of claim is filed and the Plan Administrator has not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Plan Administrator as undeliverable, no further Distribution shall be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then current address.

Undeliverable Distributions shall remain in the possession of the Plan Administrator until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an Unclaimed Distribution.

Until such time as an undeliverable Distribution becomes an Unclaimed Distribution, within 30 days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may Order, but in no event less frequently than annually, the Plan Administrator shall make Distributions of all Cash and property that has become deliverable during the preceding quarter.

The Plan Administrator shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions; provided, however, nothing contained in the Combined Plan and Disclosure Statement shall require the Plan Administrator to locate any Holder or an Allowed Claim.

K.    **Unclaimed Distributions**

Any Cash or other property to be Distributed under the Combined Plan and Disclosure Statement shall revert to the Plan Administrator or the Debtors, as applicable, if it is not claimed by the Entity on or before the Unclaimed Distribution Deadline.  If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, the Distribution made to such Entity shall be deemed to be reduced to zero.

L.    ***De Minimis* Distributions**

The Plan Administrator shall not distribute cash to the Holder of an Allowed Claim in an Impaired Class if the amount of Cash to be distributed on account of such Claim is less than $50.00 in the aggregate.  Any holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $50.00 in the aggregate will be forever barred from

asserting its Claim for such distribution against the Plan Administrator or its property. Any Cash not distributed pursuant to this Article X of the Combined Plan and Disclosure Statement will be the property of the Estates.

**M.    Setoff**

The Debtors or the Plan Administrator, as the case may be, retain the right to reduce any Claim by way of setoff in accordance with their books and records.

**N.    Postpetition Interest**

Interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims under section 506(b) of the Bankruptcy Code.

**O.    Allocation of Distributions Between Principal and Interest**

For Distributions in respect of Allowed Claims, to the extent that any such Allowed Claim entitled to a Distribution under the Combined Plan and Disclosure Statement is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

**XI.    IMPLEMENTATION AND EFFECT OF CONFIRMATION OF COMBINED PLAN AND DISCLOSURE STATEMENT**

**A.    Means for Implementation of the Combined Plan and Disclosure Statement**

In addition to the provisions set forth elsewhere in the Combined Plan and Disclosure Statement, the following shall constitute the means for implementation of the Combined Plan and Disclosure Statement:

61

1.    <u>Limited Substantive Consolidation</u>.    The Combined Plan and Disclosure Statement provides for the limited substantive consolidation of the Debtors' Estates, but solely for the purposes of this Combined Plan and Disclosure Statement, including voting on this Combined Plan and Disclosure Statement by the Holders of Claims and making any Distributions to Holders of Claims.  The Debtors propose limited substantive consolidation to avoid the inefficiency of proposing and voting in respect of Entity-specific Claims for which there would be no impact on Distributions.  On the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of either Debtor of the payment, performance, or collection of obligations of the other Debtor shall be eliminated and canceled, (v) all transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, and (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors.  Holders of Allowed Claims or Equity Interests entitled to Distributions under this Combined Plan and Disclosure Statement shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim.  Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Plan and Disclosure Statement) affect the legal and corporate structures of the Debtors.

The Debtors propose limited substantive consolidation to avoid the inefficiency of proposing and voting in respect of Entity-specific Claims for which there would be no impact on

Distributions.  Such limited substantive consolidation has been approved by the Bankruptcy Court under similar circumstances.  *See, e.g.*, *In re Accuride Corp.*, 2010 WL 5093173, at * 10 (Bankr. D. Del. Feb. 18, 2010); *In re Kaiser Aluminum Corp.*, 2006 WL 616243, at *22 (Bankr. D. Del. Feb. 6, 2006).  Moreover, the Debtors also submit that such limited substantive consolidation is appropriate under the circumstances because, due to the Debtors' organizational structure and the manner in which they did business prior to the Filing Date, the Debtors' liabilities are so intertwined that separating them would be prohibitive and would harm all creditors.  *See  In re Owens Corning*, 419 F. 3d 195, 211 (3d Cir. 2007).

2.    Funding of Liabilities and Distributions.    Allowed Claims and any amounts necessary to wind down the Debtors' Estates shall be paid from:  (a) Cash held by the Debtors as of the Effective Date, and (b) Cash proceeds obtained after the Effective Date, if any, from all sources, including the liquidation and collection of the Debtors' remaining assets and from any Additional Assets.  Additionally, Wuxi and the Debtors or Post-Effective Date Debtors, as applicable, shall cooperate in good faith to collect the $3 million account receivable, or holdback, of Mesquite to be used for Distribution.

3.    Corporate Action; Effectuating Documents; Further Transactions.    On the Effective Date, all matters and actions provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the directors and officers of the Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the directors and officers of the Debtors. The Debtors, the Post-Effective Date Debtors or the Plan Administrator, as applicable, are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to

63

effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

## XII.  EXCULPATION, RELEASES AND INJUNCTIONS

**A.**      **Exculpation.**  **The Debtors, the Committee, the members of the Committee, in each member's individual capacity, and any of such parties' respective current and/or post-Petition Date and pre-Effective Date Related Persons, shall not have or incur any liability for any act or omission taken or not taken in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and Filing of this Combined Plan and Disclosure Statement, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts and leases, the pursuit of confirmation of this Combined Plan and Disclosure Statement, the consummation of this Combined Plan and Disclosure Statement, or the administration of this Combined Plan and Disclosure Statement or the property to be Distributed under this Combined Plan and Disclosure Statement, except for their willful misconduct or gross negligence or any obligations that they have under or in connection with this Combined Plan and Disclosure Statement or the transactions contemplated in this Combined Plan and Disclosure Statement.  Nothing herein shall prevent any exculpated party from asserting as a defense to any claim of willful misconduct or gross negligence that they reasonably relied upon the advice of counsel with respect to their duties and responsibilities under the Combined Plan and Disclosure Statement or otherwise.**

**B.**      **Releases By the Debtors.**  **Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors and each of the Debtors' successors and assigns, shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void, extinguish and discharge the Released Parties, Suntech Holdings (and any of its professionals and officers and directors**

64

retained as of the Effective Date), and each Debtor's Related Persons from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability, for any act or omission (i) that took place prior to the Petition Date relating to and/or in connection with any of the Debtors, including, as it relates to Suntech Holdings, the Holdings Loan (which shall be cancelled and all liabilities due and owing to the Debtor thereunder discharged upon the Effective Date), and (ii) in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and Filing of this Combined Plan and Disclosure Statement, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of Executory Contracts and leases, the pursuit of confirmation of this Combined Plan and Disclosure Statement, the consummation of this Combined Plan and Disclosure Statement, or the administration of this Combined Plan and Disclosure Statement or the property to be distributed under this Combined Plan and Disclosure Statement.

C.      **Third Party Releases.**  Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties, each Holder of an Allowed Claim that is deemed to vote in favor of the Combined Plan and Disclosure Statement, and each Holder of an Allowed Claim or Equity Interest that is entitled to vote on the Combined Plan and Disclosure Statement (other than those Holders of Allowed Claims and Equity Interests who abstained from voting on or voted against the Combined Plan and Disclosure Statement and, in both such circumstances, checked the "opt out" box on the Ballot, and returned it in accordance with the instructions set forth thereon), shall be, in each case, deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, void, extinguish and discharge the

65

**Released Parties, the Debtors and the Debtors' Related Persons, from any claim, Claim,**

**Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability, for**

**any act or omission (i) that took place prior to the Petition Date relating to and/or in**

**connection with any of the Debtors, and (ii) in connection with, relating to, or arising out of**

**the Chapter 11 Cases, the negotiation and Filing of this Combined Plan and Disclosure**

**Statement, the Filing of the Chapter 11 Cases, the settlement of Claims or renegotiation of**

**Executory Contracts and leases, the pursuit of confirmation of this Combined Plan and**

**Disclosure Statement, the consummation of this Combined Plan and Disclosure Statement,**

**or the administration of this Combined Plan and Disclosure Statement or the property to**

**be Distributed under this Combined Plan and Disclosure Statement.**

**D.      Injunctions Relating to Releases.  Effective as of the Effective Date, all Persons that**

**hold, have held or may hold a claim, Claim, Cause of Action, obligation, suit, judgment,**

**damages, debt, right, remedy or liability of any nature whatsoever, that is released**

**pursuant to this Combined Plan and Disclosure Statement, shall be permanently, forever**

**and completely stayed, restrained, prohibited, barred and enjoined from taking any of the**

**following actions, whether directly or indirectly, derivatively or otherwise, on account of or**

**based on the subject matter of such released claims, Claims, Causes of Action, obligations,**

**suits, judgments, damages, debts, rights, remedies or liabilities, (i) commencing, conducting**

**or continuing in any manner, directly or indirectly, any suit, action or other proceeding**

**(including, without limitation, any judicial, arbitral, administrative or other proceeding) in**

**any forum, (ii) enforcing, attaching (including, without limitation, any prejudgment**

**attachment), collecting, or in any way seeking to recover any judgment, award, decree, or**

**other order, (iii) creating, perfecting or in any way enforcing in any matter, directly or**

indirectly, any lien, (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person released under this Combined Plan and Disclosure Statement, and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement or the Confirmation Order.

E.    **Injunctions to Protect Estate Assets.**  Except as expressly otherwise provided in the Combined Plan and Disclosure Statement, including Section XVI.D hereof, or to the extent necessary to enforce the terms and conditions of the Combined Plan and Disclosure Statement, the Confirmation Order or a separate Order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against the Debtors, the Debtors' Estates, the Post-Effective Date Debtors and/or the Debtors' successors or any of their property on account of any such Claims or Equity Interests: (i) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or Order; (iii) creating, perfecting, or enforcing any Lien; (iv) asserting a setoff (except to the extent such setoff was exercised prior to the Petition Date), right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors; and (v) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement.

67

## XIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Unexpired Leases

Subject to Article XIII.C and D below, on the Effective Date, all Executory Contracts not assumed before the Effective Date, or subject to a pending motion to assume as of the Effective Date, will be deemed rejected.  The Confirmation Order shall constitute an Order approving such rejection as of the Effective Date.

### B.    Deadline for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Combined Plan and Disclosure Statement

If the rejection by the Debtors of an Executory Contract pursuant to the Combined Plan and Disclosure Statement gives rise to a Claim, a proof of claim must be submitted to the Balloting Agent at UpShot Services LLC, 8269 E. 23rd Ave., Suite 275, Denver, Colorado 80238, by no later than twenty (21) days after service of the notice of the Effective Date.  Any proofs of claim not filed and served within such time period will be forever barred from assertion against the Debtors and their Estates.  Unless otherwise Ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts shall be treated as Class 3 Claims under the Combined Plan and Disclosure Statement.  For the avoidance of doubt, any Claims arising from the rejection of an Executory Contract pursuant to a separate motion are subject to the Rejection Bar Date.

### C.    Debtors' Obligations Pursuant to their Corporate Charters, Bylaws or other Organizational Documents

By this Combined Plan and Disclosure Statement, the Debtors hereby assume all obligations pursuant to their corporate charters, bylaws or other organization documents to indemnify current officers, directors, agents and/or employees with respect to all present and future actions, suits and proceedings against the Debtors or such directors, officers, agents and/or employees, based upon any act or omission for or on behalf of the Debtors.  All such obligations

68

shall not be discharged or impaired by confirmation of the Combined Plan and Disclosure Statement. Notwithstanding the foregoing, any and all such related pre-Petition Date obligations (including prepetition indemnification obligations and prepetition cure obligations) shall constitute Class 3 Claims, without further recourse to the assets of or Distributions from the Debtors' Estates. Notwithstanding the foregoing, any and all post-Petition Date indemnity obligations arising from post-Petition Date activities shall constitute Administrative Expense Claims, subject to section 503(b)(1)(A) of the Bankruptcy Code.

**D.**    **Debtors' Insurance Policies**

Nothing in the Combined Plan and Disclosure Statement and/or the Confirmation Order alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms or conditions thereof or diminishes or impairs the enforceability of the Insurance Policies.

**XIV.    CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND THE EFFECTIVE DATE**

**A.**    **Conditions Precedent to Confirmation**

The following are conditions precedent to Confirmation that must be satisfied or waived:

(i)    The Confirmation Order shall be reasonably acceptable in form and substance to the Debtors, the Committee, Solyndra and Wuxi.

(ii)    The Plan Supplement and any other exhibits or schedules incorporated as part of the Combined Plan and Disclosure Statement shall be reasonably acceptable in form and substance to the Debtors, the Committee, Solyndra and Wuxi.

69

**B.**     **Conditions Precedent to the Effective Date**

The Combined Plan and Disclosure Statement shall not become effective unless and until the following conditions shall have been satisfied or waived:

(i)      Entry of the Confirmation Order;

(ii)      The Confirmation Order becomes a Final Order;

(iii)      The approval of a settlement among Suntech Holdings and Solyndra in the official liquidation of Suntech Holdings in the Cayman Islands;

(iv)      The execution and escrow of the Reaffirmation Agreement;

(v)      The Debtors' actual receipt and escrow of $3 million in Cash proceeds on account of the Mesquite Receivable, which amount will be released upon the Effective Date in accordance with the Combined Plan and Disclosure Statement;

(vi)      The availability of sufficient funds, including the Mesquite Receivable, in the Debtors' Estates to fully fund the Class 3 and Class 4 Distributions, including the Wuxi Minimum Distribution; and

(vii)      The execution of all necessary and appropriate documents, in form and substance reasonably acceptable to the Settlement Parties.

**C.**     **Establishing the Effective Date**

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Debtors, after reasonable consultation with the Committee.  On or within two (2) Business Days of the Effective Date, the Debtors shall file and serve a notice of occurrence of the Effective Date.  Such notice shall contain, among other things, the Administrative Expense Bar Date, the deadline by which Professionals must file and serve any

RLF1 13239330v.6

Fee Claims and the deadline to file a proof of claim relating to damages from the rejection of any

Executory Contract pursuant to the terms of the Combined Plan and Disclosure Statement.

**D.**     **Effect of Failure of Conditions**

        If each condition to the Effective Date has not been satisfied or duly waived

within forty-five (45) days after the Confirmation Date, then upon motion by any party in

interest, made before the time that each of the conditions has been satisfied or duly waived and

upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation

Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the

filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the

Effective Date is either satisfied or duly waived by the Debtors, the Committee, Solyndra and

Wuxi before any Order granting such relief becomes a Final Order.  If the Confirmation Order is

vacated pursuant to this section, the Combined Plan and Disclosure Statement shall be deemed

null and void in all respects and nothing contained herein shall (A) constitute a waiver or release

of any Claims by or against the Debtors, or (B) prejudice in any manner the rights of the Debtors.

        In addition, if each condition to the Effective Date has not been satisfied or duly

waived within forty-five (45) days after the Confirmation Date, the Debtors shall, on a quarterly

basis until the earlier of the occurrence of the Effective Date or the date the Confirmation Order

is vacated, File a notice with the Bankruptcy Court that indicates which conditions precedent to

the Effective Date have not occurred and have not been duly waived.

**E.**     **Waiver of Conditions to Confirmation and Effective Date**

        Each of the conditions to the Effective Date may be waived, in whole or in part,

by collective agreement of the Debtors, Committee, Solyndra and Wuxi, without notice or an

Order of the Bankruptcy Court.

RLF1 13239330v.6

## XV.  **RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the interests and purposes of the Combined Plan and Disclosure Statement are carried out.  The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Combined Plan and Disclosure Statement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i)      To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(ii)      To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(iii)      To issue such Orders in aid of execution and consummation of the Combined Plan and Disclosure Statement, to the extent authorized by section 1142 of the Bankruptcy Code;

(iv)      To consider any amendments to or modifications of the Combined Plan and Disclosure Statement, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(v)      To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

(vi)      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Plan and Disclosure Statement;

72

(vii)    To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors or the Plan Administrator for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

(viii)    To hear any other matter not inconsistent with the Bankruptcy Code;

(ix)    To enter a final decree closing the Chapter 11 Cases;

(x)    To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Plan and Disclosure Statement;

(xi)    To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(xii)    To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Plan and Disclosure Statement, except as otherwise provided herein;

(xiii)    To determine any other matters that may arise in connection with or related to the Combined Plan and Disclosure Statement, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Combined Plan and Disclosure Statement or the Disclosure Statement;

(xiv)    To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

73

(xv)    To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(xvi)    To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the General Bar Date, the Governmental Unit Bar Date, the Rejection Bar Date, the Administrative Expense Bar Date, and/or the hearing on the approval of the Combined Plan and Disclosure Statement for the purpose of determining whether a Claim, or Equity Interest is discharged and/or enjoined hereunder or for any other purpose; and

(xvii)    To resolve any other matter or for any purpose specified in the Combined Plan and Disclosure Statement, the Confirmation Order, or any other document entered into in connection with any of the foregoing.

## XVI.  MISCELLANEOUS PROVISIONS

### A.    Avoidance Actions

The Debtors and the Creditors' Committee believe that the Debtors' Avoidance Actions are of nominal value given, among other things, the following: (a) the number of payments that were made by the Debtors during the applicable look-back periods given that the Debtors were not operating for significant portions of such periods, (b) the payments that may be subject to an Avoidance Action may be subject to valid defenses, and (c) that even if the Debtors obtained favorable judgments against the transferees that are subject to potential Avoidance Actions, such judgments may be difficult to enforce and/or collect because (i) the applicable transfers occurred and/or the transferees are located extraterritorially and/or (ii) certain of the transferees are believed to have limited (and in some cases no) assets from which to collect on account of any such judgment.  As a result of the foregoing and recognizing that the attendant cost to litigate, enforce and collect on any Avoidance Actions may be substantial, the Settlement Parties have agreed to waive all such actions as part of the Plan Settlement.  Accordingly,

74

pursuant to the Plan Settlement, all Avoidance Actions shall be deemed waived and released as of the Effective Date.

## B.   Books and Records

On the Effective Date, the Debtors' books and records (the "**Books and Records**") shall be transferred to the Post-Effective Date Debtors.  The Plan Administrator shall be free, in his discretion to abandon, destroy or otherwise dispose of the Books and Records in compliance with applicable non-bankruptcy law at any time on and after the Effective Date, without the need for any other or further Order.

## C.   Revesting of Debtors' Assets

Except as otherwise provided herein, any assets that are property of the Debtors' Estates on the Effective Date including, without limitation, any Causes of Action (other than Avoidance Actions), shall revest in the Post-Effective Date Debtors on the Effective Date. Thereafter, the Post-Effective Date Debtors (at the direction of the Plan Administrator) may operate their business and may use, acquire and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or Bankruptcy Court approval.  Except as specifically provided in the Combined Plan and Disclosure Statement or the Confirmation Order, as of the Effective Date, all property of the Debtors shall be free and clear of any liens, Claims, encumbrances and interests of any kind.  Notwithstanding the foregoing, the Additional Assets shall be distributed as provided for by the Combined Plan and Disclosure Statement.

Additionally, for the avoidance of doubt, on the Effective Date, the Reaffirmation Agreement and the Mesquite Receivable shall be simultaneously released to each of Mesquite and the Debtors' Estates, respectively.

## D.   Termination of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or

75

stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant on the Confirmation Date shall terminate on the Effective Date, at which time the injunctions and stays set forth in this Combined Plan and Disclosure Statement shall take effect; provided, however, that Solyndra shall be permitted to take such actions as may be necessary in the Solyndra Litigation to settle out the Debtors as defendants and continue to prosecute the remaining defendants; provided, further, however, that the Holders of Allowed Products Liability Claims shall be permitted to take such actions as may be necessary solely for the purposes of:  (i) establishing the Debtors' liability with respect to any such Claim in order to pursue recovery solely against the Debtors' Insurance Policies with third party insurers but not against any other property of the Debtors, the Debtors' Estates, the Post-Effective Date Debtors and/or the Debtors' successors, and (ii) pursuing any other Entity (including any third party insurer) or such other Entity's property to satisfy such Claim.

**E.**     **Amendment or Modification of the Combined Plan and Disclosure Statement**

Alterations, amendments or modifications of the Combined Plan and Disclosure Statement may be proposed in writing by the Debtors, at any time before the Confirmation Date, provided that the Combined Plan and Disclosure Statement, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code; provided, however, that, pursuant to the Plan Settlement, the Debtors have agreed not to amend or modify the Combined Plan and Disclosure Statement without the prior written consent of the Committee, Solyndra and Wuxi to the extent such amendment or modification constitutes a material alteration of the terms hereof, provided the Plan Settlement remains in place and is adhered to by the Committee, Solyndra and Wuxi.

RLF1 13239330v.6

**F.**      **Severability**

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Plan and Disclosure Statement is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interest as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Combined Plan and Disclosure Statement.

**G.**      **Revocation or Withdrawal of the Combined Plan and Disclosure Statement**

The Debtors reserve the right to revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date.  If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date, then the Combined Plan and Disclosure Statement shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors.

**H.**      **Binding Effect**

The Combined Plan and Disclosure Statement shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims and the Holders of Equity Interests, and their respective successors and assigns.

**I.**      **Notices**

All notices, requests and demands to or upon the Plan Administrator or the Debtors, as applicable, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in

RLF1 13239330v.6

the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as shall be set forth in the Confirmation Order.

**J.**       **Governing Law**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Combined Plan and Disclosure Statement provides otherwise, the rights and obligations arising under the Combined Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

**K.**       **Withholding and Reporting Requirements**

In connection with the consummation of the Combined Plan and Disclosure Statement, the Debtors and Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Combined Plan and Disclosure Statement shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution. The Debtors and the Plan Administrator have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any disbursing party for payment of any such tax obligations. The Debtors or Plan Administrator may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such Holder. If the Debtors or Plan Administrator make such a request and the Holder fails to comply before the date that is 180 days after the request is

made, the amount of such Distribution shall irrevocably revert to the Debtors and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Debtors or their respective property.

**L.    Headings**

Headings are used in the Combined Plan and Disclosure Statement for convenience and reference only, and shall not constitute a part of the Combined Plan and Disclosure Statement for any other purpose.

**M.    Exhibits/Schedules**

All exhibits and schedules to the Combined Plan and Disclosure Statement are incorporated into and are a part of the Combined Plan and Disclosure Statement as if set forth in full herein.

**N.    Filing of Additional Documents**

On or before substantial consummation of the Combined Plan and Disclosure Statement, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement; provided that the Plan Supplement shall be Filed at least five (5) Business Days prior to the Voting Deadline.

**O.    No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Plan and Disclosure Statement shall be deemed as an admission by any Entity with respect to any matter set forth herein.

**P.**     **Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in the Combined Plan and Disclosure Statement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

**Q.**     **Reservation of Rights**

Except as expressly set forth herein, the Combined Plan and Disclosure Statement shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Combined Plan and Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors, Holders of Claims or Equity Interest before the Effective Date.

**R.**     **Implementation**

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Combined Plan and Disclosure Statement.

**S.**     **Inconsistency**

In the event of any inconsistency among the Combined Plan and Disclosure Statement and any other instrument or document created or executed pursuant to the Combined Plan and Disclosure Statement, the provisions of the Combined Plan and Disclosure Statement shall govern.

RLF1 13239330v.6

**T.**    **Dissolution of the Debtors**

In connection with and following the closing of the Chapter 11 Cases, the Post-Effective Date Debtors are authorized to take any and all actions necessary to effect the Debtors' dissolution for all purposes under applicable state law.

**U.**    **Dissolution of the Committee**

Upon the occurrence of the Effective Date, the Committee shall disband and dissolve automatically, whereupon its members, professionals and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) applications for payment of fees and reimbursement of expenses of Professionals, and (iii) any pending motions or motions for other actions seeking enforcement of implementation of the provisions of the Combined Plan and Disclosure Statement).

**V.**    **Termination of the Plan Administrator**

After the Chapter 11 Cases are closed and the Plan Administrator has completed all of the tasks necessary in order to fully and completely wind down, dissolve and/or terminate the Debtors and to otherwise comply with its obligations under the terms of the Combined Plan and Disclosure Statement, the Plan Administrator shall have fully completed its duties under the Combined Plan and Disclosure Statement and thereby shall be fully released and discharged of its duties and obligations to carry out the terms of the Combined Plan and Disclosure Statement.

**W.**    **Compromise of Controversies**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Combined Plan and Disclosure Statement, the provisions of this Combined Plan and Disclosure Statement shall constitute a good faith

compromise and settlement of all Claims or controversies resolved pursuant to the Combined Plan and Disclosure Statement and in these Chapter 11 Cases.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Combined Plan and Disclosure Statement and the Chapter 11 Cases, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates and all Holders of Claims and Equity Interests against the Debtors.

## X.      **Request for Expedited Determination of Taxes**

The Debtors and the Plan Administrator shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

Dated:  January 12, 2016          Suntech America, Inc.
        Wilmington, Delaware

                                  By:  /s/ Robert Moon_____
                                       Name: Robert Moon
                                       Title: Chief Restructuring Officer


Dated:  January 12, 2016          Suntech Arizona, Inc.
        Wilmington, Delaware

                                  By:  /s/ Robert Moon_____
                                       Name: Robert Moon
                                       Title: Authorized Person

RLF1 13239330v.6